**PITTSBURGH, L. & W. R. CO. et al. v. UNITED STATES et al.**

No. 3411.

District Court, W. D. Pennsylvania.

Nov. 28, 1938.

Rose & Eichenauer, of Pittsburgh, Pa., for plaintiff.

Elmer B. Collins, Sp. Asst. to Atty. Gen., and J. Stanley Payne, Asst. Chief Counsel, of Washington, D. C., for Interstate Commerce Commission.

Alex. M. Bull, of Washington, D. C., for Consolidated Coal Co.

Patterson, Crawford, Arensberg & Dunn, of Pittsburgh, Pa., for intervening defendants General Coal Co. and others.

John J. Fitzpatrick, of Baltimore, Md., John C. Bane, Jr., of Pittsburgh, Pa., Guernsey Orcutt and Leo P. Day, both of Chicago, Ill., J. P. Canney, of Cleveland, Ohio, and Albert Ward, of Philadelphia, Pa., for intervening defendants railroads.

Before DAVIS, Circuit Judge and GIBSON and SCHOONMAKER, District Judges.

PER CURIAM.

This is a suit filed under the provisions of the Act of Congress approved October 22, 1913, 28 U.S.C.A. § 41 (28). The petitioners seek to enjoin and set aside an order of the Interstate Commerce Commission entered under date of April 4, 1938, in Pittsburgh, Lisbon & Western Railroad Company, et al. Practices, 227 I.C.C. 73. The effective date of the order was fixed by the Commission as June 30, 1938, but by subsequent orders the effective date has been postponed until December 1, 1938. That order prescribed interstate and intrastate rates on bituminous coal via petitioners' lines, the Pittsburgh, Lisbon & Western Railroad Company and The Youngstown & Suburban Railway Company, and also via routes of the intervening trunk line railroads from the Leetonia district to Youngstown, Ohio. The Commission's order was entered under Section 1(5), 3(1), 13(4) and 15(1) of the Interstate Commerce Act, 49 U.S.C.A. §§ 1(5), 3(1), 13(4) and 15(1).

The order is predicated on a finding by the Commission that the interstate all-rail rates on bituminous coal from the Pittsburgh, Connellsville, Fairmount and related districts (except the Leetonia district) to Youngstown and points grouped therewith, the interstate river-rates from Colona and Conway and other Ohio River points to Youngstown on ex-river coal, the existing rate differentials, and the rate-adjustments resulting therefrom, are fair and reasonable; that the interstate rates of $1.04 and 60¢ per ton on bituminous coal, in carloads, from the Leetonia district to Youngstown and points grouped therewith, are unreasonable to the extent they exceed or are less than 84¢ per ton, or a rate that exceeds or is less than a rate based on 50¢ under the all-rail rate on bituminous coal, in carloads, from the Pittsburgh district to the Youngstown group, and 50¢ plus the existing differentials over the rate from the Pittsburgh district, under the all-rail rates on bituminous coal, in carloads, from the Freeport, Connellsville and Fairmount districts to the Youngstown group; that the resulting rate differentials and

rate relations will be just and reasonable; that the transportation conditions affecting interstate transportation conditions affecting interstate transportation of coal by rail from the Pittsburgh and the said other districts and from Colona and Conway to Youngstown are substantially similar to those affecting the intrastate transportation of coal to Youngstown from points on the petitioners' lines in the Leetonia district; that if the intrastate rate of 60¢ per ton now applicable to coal from the Leetonia district over the petitioners' line to Youngstown and intermediate points be increased to 84¢ per ton, it will result in increased revenue to said petitioners; that the movement of coal in interstate commerce to Youngstown has been, and will continue to be, adversely affected by the maintenance of said intrastate rate of 60¢; that said rate has resulted, and will continue to result, in substantial losses in the revenue of the interstate carriers to which they are justly entitled; that it has had, and will continue to have, an adverse effect upon their ability adequately to maintain themselves as parts of the national railway system; that said intrastate rate of 60¢ per ton now applicable on coal from the Leetonia district to Youngstown causes undue and unreasonable advantage and preference to persons and localities in intrastate commerce and undue and unreasonable disadvantage and prejudice to persons and localities in interstate commerce; that this discrimination can and should be removed by requiring petitioners to cease and desist from maintaining said intrastate rate of 60¢ and to publish in lieu thereof a rate of 84¢ per ton; that such a rate relation to the reasonable interstate rates therein approved from the Pittsburgh and related districts will be just and reasonable.

Youngstown is an important coal market. Numerous steel and coking plants located there consume large quantities of coal. The supply is drawn from mines in Ohio, mostly in intrastate commerce, and from mines in Pennsylvania, West Virginia, Kentucky, in interstate commerce. For rate-making purposes, the coal mines are grouped, and the rate-groups are referred to as "Districts." A map showing these districts appears in the Commission's record in this case as "Kern's Exhibit 178." The same freight rate applies on all shipments of coal from each district to the point of destination. The key or base-rate on which coal rate adjustments from various districts to Youngstown are made is the prevailing rate from the Pittsburgh district to Youngstown. This rate is $1.34.

The Leetonia district lies directly south of Youngstown, and except for a few mines located in Pennsylvania (not being operated at the present time), is wholly within the State of Ohio. Shippers of coal in the Pittsburgh, Connellsville, Fairmount and other districts in Pennsylvania and West Virginia compete with shippers of coal in the Leetonia district in the Youngstown market. These coal districts are served by various railroads, including the Baltimore & Ohio, the Pennsylvania, the New York Central, the Pittsburgh & Lake Erie, the Chesapeake & Ohio, the Norfolk & Western. The Pennsylvania Railroad uses its own rails into, and serves the Pittsburgh, Freeport, Connellsville and other districts, and its railroad reaches and serves Youngstown. It also serves the Ohio District No. 8, Cambridge and Leetonia districts. The Baltimore & Ohio serves the Pittsburgh, Reynoldsville and Meyersdale districts in Pennsylvania, the Fairmount and Moundsville districts in northern West Virginia, and the Cumberland and Piedmont districts in Maryland and West Virginia. It also serves the Ohio district, including the Leetonia district. Its main line west to Chicago passes through Youngstown. The Pittsburgh & Lake Erie, part of the New York Central System, and its lateral lines, serves the Pittsburgh and Connellsville districts in Pennsylvania, the Fairmount district in West Virginia. Its main line to Cleveland passes through Youngstown.

The Commission concluded, in previous hearings, that the Youngstown district should have access to the Ohio River by a rail line or lines which would afford it substantially the transportation advantages, including rates, to the Ohio River, proposed by the applicants. Meeting that suggestion, the trunk-line railroads, the Pittsburgh & Lake Erie and the Pennsylvania Railroad installed facilities respectively at Colona and Conway on the Ohio River for receiving coal shipped by river to these points, and thence by rail to Youngstown. The Commission prescribed a 90¢ rate as a reasonable minimum rate from these two points, and that was approved by a statutory court in Youngstown Sheet & Tube Company v. U. S., D. C., 7 F.Supp. 33, and later by the Supreme

Court, 295 U.S. 476, 55 S.Ct. 822, 79 L.Ed. 1553. The major part of the coal shipped over the petitioners' lines from the Lectonia district is not mined in that district. It comes by river transportation to Smith's Ferry and then is taken by private railroad of the Pittsburgh Coal Company to the cleaning plant at Brush Run. Then it is shipped over the petitioners' line to Youngstown at the 60¢ rate complained of. The Pittsburgh Coal Company owns all of the stock of the petitioning railroad.

In its consideration of the case, the Commission specifically stated that it considered the coal from the Brush Run plant received for transportation by the petitioners as coal which originates in the Lectonia district, and that in respect to its transportation in intrastate commerce, they could not distinguish that coal from other coal which originates at any other point on petitioners' line in the Lectonia district. 227 I.C.C. pages 105, 106.

The petitioners contend that the order is invalid because: (1) It is in excess of the Commission's power; (2) It is arbitrary; (3) It is based on mistakes of law; (4) Its essential findings are unsupported by evidence; (5) It violates the due-process clause of the Constitution U.S.C.A. Const.Amend. 5 both in respect to the manner it was arrived at, and in respect to its effect upon those subject to it.

The petitioners ask us to go behind the form of the Commission's order, and find from the evidence that it was in substance and effect a purposeful regulation of industrial and economic conditions, in that its real and substantial purpose was to strike at a single shipper, namely, the Pittsburgh Coal Company, and to reduce the volume of coal shipped on petitioners' lines by that Company by depriving it of industrial and economical advantages arising from a favorable plant location by giving it a short haul to market.

The Supreme Court has held that under Section 13(4) of the Interstate Commerce Act, 49 U.S.C.A. § 13(4), the Interstate Commerce Commission is given plenary power to remove the discrimination created by intrastate rates against interstate commerce by raising intrastate rates so that the intrastate traffic may produce its fair share of the revenue required to meet maintenance and operating costs, and to yield a fair return on the value of property devoted to the transportation service. See Illi-

nois Commerce Commission v. U. S., 292 U.S. 474, 54 S.Ct. 783, 78 L.Ed. 1371.

The Supreme Court has also held in a case involving intrastate rates on bituminous coal from certain mining districts to destinations in the northern portions of the state, that where the Interstate Commerce Commission has found that intrastate rates for such transportation of coal were substantially lower than interstate rates on such coal moving to the same districts from districts in Pennsylvania and West Virginia, that the interstate rates from the latter districts were reasonable; that the systems of differentials between the Ohio origins and the more remote other-state origins were proper, distance and other conditions considered; that the reduced Ohio rates were unduly preferential of persons and localities in Ohio and unduly prejudicial to persons and localities in the Pennsylvania and West Virginia districts; and that in order to remove such discrimination, the intrastate rates should be increased to their former level. The Supreme Court held that the order with respect to intrastate rates was justified under Section 13 of the Act, 49 U.S.C.A. § 13. See Ohio v. U. S., 292 U.S. 498, 54 S.Ct. 792, 78 L.Ed. 1388.

■ With these decisions in mind, we have reviewed the evidence before the Commission, and have come to the conclusion that there is ample evidence to sustain the findings of the Commission and the order. It may be that we might not have arrived at the same result had we been considering the same evidence, but that question is not for our determination. We do not believe that any extensive discussion of evidence is necessary, nor any citation of authorities, in view of the two cases referred to which involve coal shipments to northeastern Ohio. It might be noted, however, that there can be no question of reasonableness of the rates on ex-river coal from Colona and Conway, Pennsylvania, to Youngstown, for the Supreme Court has already sustained the Commission's order requiring an increase in the ex-river rate from Colona and Conway to Youngstown from 77¢ to 90¢.

■ The petitioners in this case have asked us to go behind the record and find that the rate in question was intended as an absolute regulation of that condition and therefore invalid. We do not believe we are justified in doing so. The Commission

338

has expressly found that in dealing with the question of rates from the Leetonia district to Youngstown, they have considered the coal of the Pittsburgh Coal Company which is shipped from Negley to Youngstown, as being coal which originates in the Leetonia district. We find nothing in the record to justify a conclusion that the Commission acted in any other way than in good faith, in considering the rates before them as applying to all coal involved as coal originating in the Leetonia district.

■ As we view the case, there are four basic findings that support the Commission's order: (1) The reasonableness of the interstate rates on bituminous coal; (2) The unwarranted disparity between the reasonable interstate rates and the petitioners' intrastate rates; (3) The similarity of transportation conditions under which the interstate and intrastate movements are conducted; (4) The disparity as between the intrastate and interstate rates which should be removed by increasing the intrastate rates to the level necessary to remove the resulting undue prejudice and unjust discrimination against interstate shippers, localities, and commerce.

■ We find no error in the application of rules of law by the Commission, and think its findings are based on substantial evidence. The order, therefore, is valid. Florida v. U. S., 292 U.S. 1, 12, 54 S.Ct. 603, 78 L.Ed. 1077.

■ On the claim by the petitioners that the 60¢ rate from the Leetonia district to Youngstown was compelled by truck competition from the same area, the report of the Commission shows that it gave consideration to evidence on this point, and reached the conclusion that as to the greater portion of coal transported by petitioners since 1935, there was no motor or market competition requiring the reduction of rates to 60¢. There was evidence in the record on which the Commission could have made this finding, and we can find no reason for disturbing the rate fixed by the Commission on account of motor-truck competition. That the Commission considered the matter of truck competition is shown by the report on page 112, as follows: "The facts warrant the conclusion that the reduction in the intrastate rate to 60¢ as applied to the great proportion of the coal transported by the Lisbon and Suburban caused a substantial loss in intrastate revenue and was not forced upon the carriers by motor-truck or market competition. Whatever loss in revenue may occur through the establishment of a higher rate for application to the coal traffic originated at the few stations on these carriers other than Negley would be more than offset by increased revenue from the application of a higher rate upon the coal from Negley which constitutes the principal traffic."

In the case of Florida v. U. S., 292 U.S. 1, 11, 54 S.Ct. 603, 78 L.Ed. 1077, the Commission made a similar finding with reference to the alleged truck competition there, and that finding was sustained by the Supreme Court. Of course, the weight of evidence as to truck competition, like other evidence in administrative proceedings, is entirely for the Commission. In the case at bar, it appears to us that the court has been asked to re-examine the evidence, appraise it, and hold that the Commission erred in its judgment as to the facts. This, as pointed out in Ohio v. U. S., 292 U.S. 498, 54 S.Ct. 792, 78 L.Ed. 1388, the court has no power to do.

We, therefore, hold the order valid and shall dismiss the bill of complaint in this case. Proper findings and order of dismissal may be submitted.