## Davis et al., etc., v. American Meter Company

*Marsh, Spaeder, Baur & Spaeder*, for plaintiffs.
*Gifford, Graham, MacDonald & Illig*, for defendant.

EVANS, P. J., April 10, 1952.—Plaintiffs seek an order of court under the provisions of the Act of August

11, 1941, P. L. 898, 43 PS §941 et seq., restraining defendant from selling gasoline at its plant to employes at wholesale prices.

From the pleadings and the testimony we make the following

### Findings of Fact

1. Plaintiffs are owners of retail gasoline stations in the City of Erie.

2. Defendant is a corporation doing business in the City of Erie, being principally engaged in manufacturing and assembling meter devices for measuring of gas used for heating and cooking.

3. Defendant has installed on its factory premises a gasoline dispensing pump from which, for a period in excess of 25 years, it has regularly, at wholesale or tank wagon prices, sold gasoline to its employes for use in their automobiles.

4. The gasoline sold is not a product of defendant's manufacturing plant, nor is it handled in its regular course of trade or business, or in any way connected or related thereto.

5. The employes own or operate between 350 and 400 cars for transportation to and from work, and of these the owners of 135 regularly avail themselves of the opportunity to purchase from defendant gasoline at cost.

6. Approximately 4,000 gallons of gasoline are sold each month in the manner described.

7. Plaintiffs, as well as many other gasoline station operators, lose the profit which would come to them in the normal course of retail trade were this practice discontinued.

### Discussion

There is no dispute as to the above facts, and our problem is to pass upon defendant's contention that the Act of 1941, supra, is unconstitutional in that it violates article III, sec. 7, of the Pennsylvania Con-

stitution, providing that the General Assembly shall not pass any local or special law regulating labor, trade, mining or manufacturing, and that it violates the fourteenth amendment to the Constitution of the United States, providing that no State shall deny to its citizens the equal protection of the laws. It appears that the questions here raised have not been passed upon by the courts. The act complained of provides as follows:

"No person, partnership, corporation or association engaged in any business or trade in this Commonwealth shall by any method or procedure, directly or indirectly, by itself or through a subsidiary agency, sell or procure for sale or have in its possession or under its control for sale to its employes or to any other person any article, material, product or merchandise of whatever nature, not of his or its own production, not handled in his or its regular course of trade or business."

There is a presumption of constitutionality attending a legislative enactment which endures until it plainly and unquestionably appears that the challenged statute violates the fundamental law. However, a law which is repugnant to the Constitution is void and it is the duty of the court to so declare when the violation unequivocally appears: Hertz Drivurself v. Siggins et al., 359 Pa. 25.

It is conceded that there is nothing in the practice here complained of which affects the health, peace, safety and morals of the general public. There is nothing in the practice which can be considered an intentional and deliberate dedication of private property to public use so as to subrogate it automatically to legislative regulation and control. It is contended, however, by plaintiffs that although the act in its preamble states that its purpose is to abolish a practice which "interferes with and diverts the proper and nor-

mal flow of trade and commerce from persons engaged in retail business", it is nevertheless in the public interest that such retail establishments should be protected. In Hertz Drivurself, supra, citing Wolff Packing Company v. Court of Industrial Relations, 262 U. S. 522, the court states: " 'In a sense, the public is concerned about all lawful business because it contributes to the prosperity and well being of the people.' "

But that is not the kind of "public interest" in a private business or property that renders it amenable to public regulations and control.

In Nolan v. Jones, 263 Pa. 124, the court held:

". . . 'to justify the State in interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; . . . the legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.' "

Plaintiffs rely on Nebbia v. New York, 292 U. S. 502, 54 S. Ct. 505, and other cases cited therein, as authority for their position that the subject herein involved is properly one for regulation in the common interest. An examination of many of these cases included in the dissenting, as well as the majority opinion, indicates why Mr. Justice Roberts made this comment, p. 536:

"It is clear that there is no closed class or category of businesses affected with a public interest, and the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory."

Likewise, in the Hertz case, our Supreme Court held:

"Unfortunately, there is no hard and fast rule for

determining arbitrarily and conclusively when a business or property is affected with a public interest."

Therein it was further held that where the interests of public health or safety are not involved, it is rarely, except where the question of a monopoly exists, that there is an "affection" with public interest which will justify legislative interference. Specifically, on this point, the court held:

"The instances where a private property's 'affection' with a public interest does not rest upon its capacity for monopolistic use in the performance of a service to the public in general so as to subject the property to legislative regulation and control are relatively few indeed."

There is no question of monopoly involved here, and it remains for us to consider whether or not this case may be classified as coming within those referred to as "relatively few." There is no peculiarly close relationship between the public and plaintiff's or defendant's businesses. In our opinion, the practice here complained of is one of inconvenience to defendant, and its only purpose is to promote good labor relations. Many comparable practices are engaged in by employers. It is not unusual that group health and life insurance, athletic equipment and medical aid are furnished to employes at cost or less. Although not to be exactly classed in the category of retail sales, plaintiffs' reasoning would as well support an act prohibiting the furnishing thereof for the reason that they interfere with the profit which would otherwise inure to the benefit of persons selling such commodities or services in the community.

We see no public interest involved which will permit the interference with this strictly private matter between defendant and its employes and must, therefore, conclude that the above-recited act is unconstitutional and inoperative.

*Conclusions of Law*

1. The Act of August 11, 1941, P. L. 898, 43 PS §942, is unconstitutional in that it violates the fourteenth amendment to the Constitution of the United States and article III, sec. 7, of the Constitution of the State of Pennsylvania.

2. The injunction sought by this action should be refused.

*Decree*

And now, to wit, April 10, 1952, it is ordered, adjudged and decreed:

1. The bill is dismissed.

2. Plaintiffs shall pay the costs of this proceeding.

The prothonotary is directed to enter this decree nisi and to give notice to the parties or their council of record, of the entry of the decree, and, if no exceptions are filed within 10 days thereafter, the decree shall be entered as the final decree, by the prothonotary, as of course.