## YOUNGSTOWN SHEET & TUBE CO. ET AL. v. UNITED STATES ET AL.

No. 552.   Argued April 30, 1935.—Decided May 20, 1935.

*Mr. Frederick H. Wood,* with whom *Messrs. J. C. Argetsinger, J. E. Bennett,* and *August C. Gutheim* were on the brief, for appellants.

*Mr. Daniel W. Knowlton,* with whom *Solicitor General Reed, Assistant Attorney General Stephens,* and *Messrs. Elmer B. Collins* and *Nelson Thomas* were on the

brief, for the United States and Interstate Commerce Commission, appellees.

*Mr. John J. Fitzpatrick,* with whom *Messrs. Leo P. Day, M. Carter Hall, Guernsey Orcutt, Charles R. Webber,* and *Frederic D. McKenney* were on the brief, for the railroad interveners.

*Mr. Alex. M. Bull,* with whom *Mr. Henry C. Hall* was on the brief, for the Trustees of Consolidation Coal Co., appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is a suit for the annulment of an order of the Interstate Commerce Commission fixing minimum rates on ex-river coal from Ohio River points to destinations in Northern Ohio. The District Court entered a decree of dismissal.[1] The appellants attack the rate order as based upon matters the Commission had no authority to consider, and as unsupported by evidence. The appellees oppose these charges and add that the appellants have no standing to maintain the suit.

Improvement of navigation on the Ohio River and its tributaries has recently made possible shipment of coal in barges from mines at or near the streams to river destinations, for use there or for transshipment by rail to inland points. Previously these mines, with others in the same producing territory, were dependent upon the railroads, and a system of rate relationships had been built up as between the producing localities.

In anticipation of shipment of coal from river points, the rail carriers filed schedules proposing a proportional rate of $1.02 on carloads from Conway and Colona, points on the Ohio River in Pennsylvania, to Youngstown, Ohio,

---

[1] 7 F. Supp. 33.

effective May 15, 1929. The Commission suspended them, and instituted an investigation. It found the proposed rate unreasonable, and declared a reasonable maximum would be 77 cents; but contented itself with ordering the scheduled rate of $1.02 cancelled, and did not require that a maximum rate of 77 cents be adopted.[2] Subsequently the Commission held an investigation respecting proposed schedules of rates on ex-river coal from points farther down the Ohio River to Canton, Massillon, Cleveland, Lorain and South Lorain, Ohio. It cancelled these and found lower rates would be reasonable, but did not prescribe them.[3] Upon the carriers' compliance with the views of the Commission, by the establishment of the suggested rates, tonnage began to move in quantity. Meantime the Ohio Public Utilities Commission permitted and authorized reductions in intrastate coal rates, with the result that the Interstate Commerce Commission instituted a 13th section proceeding, found the interstate rail rates from the Pittsburgh and Connellsville districts to Northeastern Ohio destinations reasonable, and required the restoration of the old intrastate rates to avoid discrimination against interstate commerce.[4] While that proceeding was pending, certain carriers prayed a rehearing of the two ex-river cases above mentioned. This was granted, the cases consolidated, further evidence received and an order made in which the rate from Colona and Conway to Youngstown was fixed at not less than 90 cents, that from the lower river points to Canton and Massillon at not less than $1.20, and to Cleveland and Lorain at not less than $1.45.[5]

---

[2] 163 I. C. C. 3.

[3] 185 I. C. C. 211.

[4] 192 I. C. C. 413. This order was sustained, 6 F. Supp. 386; 292 U. S. 498.

[5] 197 I. C. C. 617.

The Commission finds: These prescribed minima are reasonable; lower rates would create undue discrimination against shippers in origin districts who cannot use the water-rail route, and would tend to disrupt the rate structure, and to destroy the proper differentials between various producing districts on shipments to Ohio destinations. These findings have ample support in the evidence.

1. The appellants were entitled to bring and maintain this suit to set aside the order.[6] They were parties to the proceeding before the Commission, had a pecuniary interest in the rates and were affected by the order. The authorities cited by the appellees are to be distinguished on the ground that the plaintiffs either had no legal interest or capacity to sue or failed to allege that the rates under attack were unreasonable or discriminated against them.[7]

2. The appellants' principal complaint is that the Commission raised the permissible minimum rate to prevent disruption of the existing rate structure and relationship of rates for carriage from various producing regions to Ohio destinations, and that an order grounded upon any such consideration is unauthorized and violates the principle announced in *United States* v. *Chicago, M., St. P. & P. R. Co.,* 294 U. S. 499. The position is not well taken. This record exhibits a situation quite distinct from that

[6] U. S. C. Tit. 28, §§ 46, 47; *Skinner & Eddy Corp.* v. *United States,* 249 U. S. 557; *Chicago Junction Case,* 264 U. S. 258, 266–269; *United States* v. *New River Co.,* 265 U. S. 533, 541; *Western Paper Makers' Chemical Co.* v. *United States,* 271 U. S. 268; *Assigned Car Cases,* 274 U. S. 564; *McLean Lumber Co.* v. *United States,* 237 Fed. 460, 464–468; *Anchor Coal Co.* v. *United States,* 25 F. (2d) 462, 478.

[7] See *United States* v. *M. & M. Traffic Assn.,* 242 U. S. 178; *Edward Hines Yellow Pine Trustees* v. *United States,* 263 U. S. 143; *Sprunt & Son, Inc.* v. *United States,* 281 U. S. 249; *Moffat Tunnel League* v. *United States,* 289 U. S. 113.

disclosed in the cited case. In the first place the Commission here found the required minimum reasonable; in the second place, it had, after full investigation in this and the Ohio case,[8] held the existing rate structure—built upon certain reasonable key or controlling rates by application of proper differentials—just and reasonable, and the ex-river rates here in issue, in contrast, too low. Comparisons of other rates in the same or adjacent territory, while not a conclusive test of reasonableness of a rate under investigation, have probative value.[9] There was much other evidence bearing upon the character of the service and cost. The order of the Commission was based primarily upon the reasonableness of the minimum prescribed. The existing rate structure furnished support for the finding of reasonableness.

3. There is no merit in the contention that the order was a § 3 order and invalid for failure to afford the carriers an alternative of raising the contested rate or lowering others to remove discrimination. It is true the Commission found prejudice to shippers all rail, but in essence the order entered was a § 15 order and not one made under § 3.[10]

*Decree affirmed.*

---

[8] *Supra,* Note 4.

[9] *United States* v. *Northern Pacific Ry. Co.,* 288 U. S. 490, 500.

[10] Compare *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136, 145.