CITY OF HARRISONBURG et al. v.
CHESAPEAKE & O. RY. CO. et al.

No. 3700.

District Court, W. D. Virginia, at Danville.

Aug. 10, 1940.

Harry C. Ames, of Washington, D. C., and Frank Talbott, Jr., of Danville, Va., for plaintiff.

M. Carter Hall, of Richmond, Va., John J. Fitzpatrick, of Baltimore, Md., and E. L. Beach, of Richmond, Va., for defendants.

PAUL, District Judge.

The plaintiffs have brought suit for damages under the provisions of Sect. 16 (2) of the Interstate Commerce Act, 49 U.S.C.A. § 16(2), based upon an order of the Interstate Commerce Commission holding certain freight charges on coal to have been unreasonable and awarding reparation.

The complaint, docketed by the Commission as No. 24885, was filed November 25, 1931, and assailed as unreasonable a rate of $2.90 per ton on coal from mines in Virginia and West Virginia on lines of the Chesapeake & Ohio Railway Company, Norfolk & Western Railway Company and the Virginian Railway Company to Harrisonburg, Virginia. After a report by an examiner containing certain recommendations, the Commission made a report on August 22, 1933, in which it pointed out that none of the defendant carriers had lines into Harrisonburg; and stated that coal from the C. & O. fields moves by the C. & O. to Staunton (Va.), thence by the Valley Railroad, 25 miles, to Harrisonburg; that coal from the N. & W. fields moves by the N. & W. to Elkton (Va.) and thence by Chesapeake Western 21 miles to Harrisonburg; that coal from the Virginian fields moves by the Virginian to Roanoke (Va.), thence by N. & W. to Elkton and Chesapeake Western to Harrisonburg; that the rate of all these routes was $2.90 from the base districts.

It appears from the report that the complaints, in assailing the existing rate as unreasonable, sought the establishment of a reasonable maximum rate on the basis of 75 per cent of what is referred to as the Holmes & Hallowell scale, determined in Holmes & Hallowell Co. v. Great Northern R. Co., 69 I.C.C. 11; on which basis the rates to Harrisonburg would have been fixed at $1.70 from the C. & O. base group, $2.09 from the N. & W. base group, and $2.19 from the Virginian base group.

After reciting the contentions made by the complaints in support of the reductions asked, the Commission held that comparisons with the so-called Holmes & Hallowell scale were not applicable and rejected the request for a determination of rates on that basis. The report then referred to its reports and findings in several other proceedings previously had, namely, Virginia State Corp. Commission v. Norfolk & W. R. Co., 190 I.C.C. 325; Staunton Brick Co. v. Chesapeake & O. R. Co., 190 I.C.C. 302; Danville Chamber of Commerce v. Chesapeake & O. R. Co., 191 I.C.C. 20; Wingfield-Hatcher Coal Co. v. Chesapeake & O. R. Co., 191 I.C.C. 644; and Deford Co. v. Norfolk & W. R. Co., 191 I.C.C. 162, and stated that all of these had to do with rates on coal from the same origin districts to destinations in Virginia and that the evidence in the instant complaint was not materially different from that in the cases referred to; that, in fact, portions of the record in the first two of the named cases had been stipulated into the present record. It is said (printed report p. 189): "All the evidence indicates that, so far as the Pocahontas lines are concerned, the situation here presented strongly resembles many of those considered in the cited cases. Obviously, then, save as the evidence concerning the Chesapeake & Western and the Valley (Railroad) may warrant some addition to the rates because of the participation of those lines in the hauls, our conclusions must harmonize with those reached in these other cases. All the evidence in behalf of all parties has had consideration. Because it has been fully stated in these other cases, however, it is not repeated here."

The report then considers the financial condition of the Chesapeake Western and

of the Valley Railroad from the standpoint of revenues, operating expenses, bonded debts, etc., showing that both operated at a loss and were entitled to the protection legally accorded weak-line roads. The report then calls attention to the differences in length of hauls from the mines of the three carriers affected (from all of which the rate was then $2.90), in these words: "No reason appears of record, and we know of none, why complainants should be deprived of the benefit of the much shorter haul from the C. & O. mines over the route of the C. & O. and Valley merely in order that mines on the rails of the N. & W. and Virginian may be on a rate parity notwithstanding that the routes from those mines are about 50 per cent longer than the route of the C. & O. and the Valley. Our findings hereinafter are made in consideration of that shorter distance."

The conclusions of the Commission as to the reasonableness of the rates assailed are stated as follows: "We find that the assailed rate from the C. & O. base group to Harrisonburg was, is, and for the future will be, unreasonable to the, extent that it exceeded, exceeds, or may exceed $2.50 and that the assailed rates from the base and differential groups on the N. & W. and Virginian were not and are not unreasonable. We further find that the assailed rate from the Kanawha district on the C. & O. was unreasonable to the extent that it exceeded a rate of $2.75. We further find that of the rate herein prescribed for the future an arbitrary of 25 cents shall accrue solely to the Valley."

The report then stated as its further finding that certain complainants (naming them) "received shipments as described and paid and bore the charges thereon at the rates herein found unreasonable; that they have been damaged thereby in the amount of the difference between the charges paid and those which would have accrued at the rates herein found reasonable; and that they are entitled to reparation, with interest." The complainants were directed to comply with Rule V, providing for submission of detailed statements of shipments received and charges paid, for the exact determination of the amount of reparation.

After the filing of this report, the complainants filed a petition seeking clarification or modification of the report, in this: that, while the Commission had held unreasonable the rate via C. & O. and Valley Railroad to Harrisonburg, it had taken no action as to a similar rate on shipments moving by way of C. & O. to Waynesboro, Va., thence by N. & W. to Elkton, Va., and thence by Chesapeake Western to Harrisonburg. The complainants asked for a similar finding of unreasonableness as to the rate over the last named route. In a report filed March 6, 1934, the Commission stated it had not previously been pressed on its attention that the assailed rate from the C. & O. fields applied over the route via Waynesboro and Elkton as well as to the shorter route to Staunton and thence to Harrisonburg; and then proceeded to consider the complainant's contentions. It pointed out that its reduction of the rate by way of Staunton and the Valley to Harrisonburg, as set out in its original report, had been based on the fact that it was a distinctly shorter route than the other routes to which the $2.90 rate applied and involved movement over only two lines. It was then stated that the route via Waynesboro and Elkton to Harrisonburg was longer and involved movement over three lines of railroad and under difficult operating conditions, and concluded that it was not unreasonable.

It will be seen, therefore, that the final action of the Commission was to deny the claims of the complainants except in one respect. It held that the assailed rates from the fields of the N. & W. and the Virginian were not unreasonable; and held similarly as to the rate on shipments from the C. & O. fields where the transportation was by way of Waynesboro and Elkton. It did find that the rate of $2.90 was unreasonable as applied to shipments from C. & O. fields to Staunton and thence by the Valley Railroad to Harrisonburg; basing this conclusion on the ground that this route was shorter and less difficult of operation than the other routes questioned. That as to the route via Staunton and the Valley Railroad it rejected complainants contention for application of the Holmes and Hallowell scale which would have called for a rate of $1.70 and fixed the rate at not exceeding $2.50 from the C. & O. base group and not exceeding $2.75 from the Kanawha district.

The carriers having declined to certify Rule V statements, a further hearing was had to receive proof in respect to shipments made and charges paid and thereafter, on April 2, 1935, a final report was filed in which, after discussing claims of

various complainants and their manner of proof, some of which were disallowed, the formal finding was made that certain complainants (named in the report) received shipments as described and paid the charges thereon at the rates found unreasonable, that they had been damaged, etc: "and that those named in the attached order are entitled to reparation, with interest, in the amounts set opposite their respective names". On the same date the usual order was entered referring to the reports and setting forth the amount of reparation due each of the complainants and directing that the sums to be paid by the C. & O. and the Valley Railroad on or before June 1, 1935. The carriers failed to make payment and this action ensued.

The defenses, as stated by the defendants (though somewhat abbreviated here), are that:

(1) The Commission's order is void because the facts found in its reports were insufficient in law to sustain the finding of unreasonableness.

(2) The Commission considered and was controlled by evidence not in the record and its order rests upon matters not legally before it.

(3) The Commission's order and its reports do not contain the essential findings of fact necessary to support an award of damages.

(4) The Commission erroneously failed to give weight to the average distance for, and the average conditions under, which the $2.90 rate was established and maintained and its action in finding this rate to Harrisonburg unreasonable was arbitrary.

It will be noted that these defenses are stated in such general terms that reference must be had to the arguments of counsel for a more definite statement of the defendants' contention.

██ This Court, in the recently decided cases of City of Danville v. Chesapeake & O. Ry. Co. et al., and Danville Hotel Co., Inc., v. Chesapeake & O. Ry. Co. et al., D.C., 34 F.Supp. 620, had occasion to discuss at some length a number of questions involved in reparation cases, including the powers of the Interstate Commerce Commission, the weight to be given its findings and the extent and nature of the findings required as a basis for a valid order of reparation. What was there said is equally applicable here and need not be repeated. So far as the defendants' contention that the order here is based upon insufficient findings of fact relates to the form of the order or report or to the extent of its stated findings, it is without merit. That the findings of the Commission need not include a statement of the evidential facts on which its conclusions are based is well settled. What is required is a statement of the ultimate facts found by the Commission and on which the right to recover damages is based. Meeker v. Lehigh Valley R. Co., 236 U.S. 412, at page 427, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691, and Mills v. Lehigh Valley R. Co., 238 U.S. 473 at pages 477 and 480, 35 S.Ct. 888, 59 L.Ed. 1414. The report and order in the instant case meet the requirements set out in the cited cases. By this it is not meant to dispose of the objection to the report and order in so far as they are questioned on the ground of the non-existence of sufficient facts upon which to base the findings made. That will be later discussed.

Consideration of the argument advanced by the defendants, both by brief and orally, indicates that their real defense lies in two contentions. The first of these is that when the complainants assailed these rates as being unreasonable they alleged certain grounds or reasons therefor which it was incumbent upon them to prove; that the Commission, so defendants contend, found that none of the grounds advanced by the complainants were tenable and rejected them, but that nevertheless, the Commission arbitrarily and of its own accord, and without sufficient evidence before it, held the rate unreasonable.

The situation appears to be that in assailing the rates as unreasonable and asking a reduction and reparations the complainants had urged as reasonable a rate determined in accordance with the Holmes and Hallowell scale; that, in alleging the unreasonableness of the existing rate, they had relied upon a comparison of the division of the rate as between the carriers and had further pointed out the alleged prosperous condition of the carriers. The Commission stated in its report that comparison with the Holmes & Hallowell scale was not applicable and that the other matters mentioned were not adequate tests on which to determine the reasonableness of a rate. But it then pointed out that the evidence before it was substantially the same as that in a number of other cases covering the same origins upon which it had recently acted, and concluded that the questioned rate was, by the standards adopted in the previous cases, unreasonable and should be

made to harmonize with rates previously fixed over comparable routes.

From this it is argued that the evidence introduced by complainants and relied on by them was rejected, leaving no evidence on which the Commission could base a finding of unreasonableness, and that its judgment that the rate was unreasonable did not conform to its findings as to the facts submitted on this issue. More simply stated, the question is whether the Commission, having considered the grounds upon which the complainants asked modification of the rate and the evidence in support of them and having held that they were not applicable to the situation before it, nevertheless had a right to hold the rates unreasonable in an amount less than asserted by complainants and for reasons differing from those advanced by complainants, but which latter grounds, so defendant contends, were not the subject of evidence before the Commission.

I do not understand that the evidence as to comparable rates upon which the Commission acted was not placed before the Commission. The report stated that the record before it did not differ materially from that placed before it in a number of other cases which it considered were comparable and notes that portions of the record in several of the previous cases was *stipulated into the present record.* In addition it would appear that the complainants introduced a large number of rate comparisons from various territories. The position of defendants seems to be that this evidence was introduced to support the contention of complainants as to the theory or manner in which they claim the rate should be fixed, and that, inasmuch as the Commission rejected the theory of complainants as not being applicable, it could not consider this evidence as a foundation for fixing the rate on any basis.

■ The argument is fine-spun and, I think, untenable. What happened was that the complainants asked for a reduction to a definite named rate and advanced several arguments to justify their request and introduced evidence of many rates which they considered comparable and which they claimed justified the reduction asked. The Commission held that the arguments or theories advanced by complainants were not applicable to the situation before it and that the evidence did not justify granting the full relief sought for but that it did justify some reduction in one of the rates assailed. This, in the opinion of the Court, it had a right to do. It was not compelled to either adopt in their entirety the claims of complainants or else dismiss the complaint. It had the power to determine the reasonableness of the rates assailed and to name a rate which in its judgment was not unreasonable so long as it had before it evidence on which to base its judgment, even though its judgment did not respond to the full demands of the complainants. There would seem no doubt of the power of the Commission to make the findings and take the action taken in this case, provided it had before it evidence on which to base its findings.

The second line of argument is that it had no such evidence before it. The contention advanced is that the Commission acted upon evidence not properly before it in this case; that it based its action here on action taken in other cases previously heard and arbitrarily reduced the rate in this case to make it harmonize with rates established in the other cases; and that the Commission acted on evidence with which the defendants were not confronted and of which they had no notice.

■ Admittedly, the evidence on which the Commission acted was largely that of comparable rates and the evidence on which some of these comparable rates had been fixed, notably in other cases recently heard by the Commission. That evidence of other comparable rates is pertinent and important would seem incapable of dispute. It is difficult to see how a judgment as to the reasonableness of a freight rate could be arrived at except by comparison with other rates. If any group of persons, no matter how intelligent, were called on to fix a reasonable rate for any given freight haul, with no knowledge whatever of customary charges for such service or of rates existing elsewhere, their judgment would undoubtedly vary widely. The standard of freight rates has been arrived at as a result of long experience. They may be altered from time to time to meet increased costs of operation arising from certain conditions or lessened costs due to other conditions. But generally speaking, and within limits, there is a reasonable standard which has been arrived at through a multitude of experiences over many thousands of miles of railroad. They differ frequently due to a difference in the difficulties and expenses of operation in different localities. But even these variations

have their basis in comparisons. The fixing of a reasonable rate over any given route is not in each case determined as an entirely new or novel proposition from which must be excluded all evidence or knowledge of rate standards or customs. It seems inevitable that in consideration of the reasonableness of any rate a primary and necessary inquiry would be a comparison with rates adopted as reasonable and operating successfully on other routes where similar operating conditions obtained.

There is no denial that the Commission acted primarily on evidence of this sort, but the contention that the evidence was not before the Commission, that the defendants were not confronted with it and had no knowledge of it is not borne out by the record. The complainants introduced evidence of a great number of rates for purposes of comparison and the parties stipulated in the record of the present case evidence taken in two other cases which the Commission had recently decided and which, by the very fact of its stipulation, must have been considered by all parties to have been pertinent and applicable.

■ The argument of defendants appears to be based on the fact that the Commission refers to the fact that it had recently decided a number of other cases involving similar routes and says that "our conclusions must harmonize with those reached in these other cases". But I do not take this to imply that the conclusion was reached merely because similar action had been taken in the other cases. If this were true, the defendants might have a right to complain that they were not confronted with the evidence on which the Commission acted or that the Commission acted without evidence. But this was not the case. The evidence in several of the other cases was made part of the record here and the fact that it had originally been offered in other cases did not impair its effect here or deprive it of the character of independent and original evidence as applied to this case. Besides, there was a mass of evidence presented by complainants which, so far as shown, had not been presented in any other case.

■ In determining the reasonableness of a questioned rate, comparison with other rates in the same territory is not a conclusive test of the reasonableness or unreasonableness of the questioned rate, but such comparisons are proper evidence and

have probative value. United States v. Northern Pac. R. Co., 288 U.S. 490, at page 500, 53 S.Ct. 406, 77 L.Ed. 914; Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, at page 480, 55 S.Ct. 822, 79 L.Ed. 1553. The extent of this probative value, i. e., the weight given this evidence by the Commission, or which it should give it, it is not within the power of this Court to determine. But it would be expected that the greater the similarity of the conditions compared, the greater the weight given the comparison; unless, perhaps it is urged that the rates used as a basis of comparison are themselves too low. No assertion of the sort is made here and, so far as appears, the rates used as comparisons were acquiesced in and placed in operation without complaint. It cannot be said, therefore, that the Commission acted without evidence or gave undue or improper weight to the evidence before it.

It should be said that the Court does not consider applicable the cases of United States v. Baltimore & O. R. Co., 293 U. S. 454, 55 S.Ct. 268, 79 L.Ed. 587, and United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L. Ed. 1023, relied on in support of its contention that the Commission's report is lacking in a finding of facts essential to an award of reparation.

■ A further contention made by defendants, but only briefly argued, is to the effect that the Commission arbitrarily discarded and failed to give weight to the average distance and average conditions under which the $2.90 rate had been established by the various carriers and its action in finding this rate unreasonable as applied to the route from mines on the C. & O. to Harrisonburg was arbitrary.

The argument on this is summed up in defendants brief as follows: "The rate of $2.90 was found not unreasonable from mines on the Norfolk & Western and the Virginian, but in consideration of the 'shorter distance' from mines on the Chesapeake and Ohio that rate was reduced from $2.90 to $2.50 from the Chesapeake and Ohio mines. We respectfully contend that, *in the absence of some standard,* there is no more reason for holding that the $2.90 was too high from Chesapeake and Ohio mines than there was for holding it was less than a reasonable maximum for application from mines on the Norfolk and Western and the Virginian."

. It is shown that the route over the Virginian is 306 miles, that over the N. & W. is 293 miles, and that over the C. & O. 203 miles. The carriers maintained what is known as a "group" rate of $2.90—a rate common to all three railroads. It seems conceded that this rate was first established by the N. & W., one of the longer routes, and that the C. & O. fixed the same rate over its shorter route through Staunton. The rate over all the roads was assailed and was considered by the Commission, which held that while the rate was not unreasonable for the hauls over the N. & W. and Virginian, it was an unreasonable one for the much shorter haul over the C. & O. The $2.90 rate was a carrier made rate and had been long maintained. Under such circumstances, it was hardly to be expected that the Commission would make inquiry as to whether the rate was too low, particularly since, so far as appears, no suggestion of the sort was made before it. When the carriers, in the exercise of their right to do so, had fixed a rate satisfactory and presumably profitable to them for a haul of 300 miles, it was a natural and logical step in any process of reasoning to consider the same rate unreasonably high for a haul of about 200 miles. The carriers themselves had fixed the standard of the alleged absence of which defendants complain. Nor was the evidence before the Commission confined solely to the difference in mileage. The difference in the length of haul undoubtedly influenced the Commission to order the reduction as to the C. & O., after it had determined that the N. & W. and Virginian rates were not unreasonable but the consideration of the reasonableness of the one and the unreasonableness of the other involved consideration of many other comparable rates and conditions.

The Court is of opinion, and so finds, that the report and order of the Interstate Commerce Commission of April 2, 1935, were made in the course of proceedings regularly conducted before the Commission and were based on substantial evidence before the Commission; that it was within the authority of the Commission to order a reduction for the future of the rate as to which it did so order and also to award reparation based on charges found to be unreasonable in the past. That the plaintiffs have been damaged by such charges made in the past in the manner and to the extent alleged by them and are entitled to have judgment for the amounts due them respectively as prayed for in their complaint, except the State Teachers College (now Madison College) which on its own motion has been dismissed as a plaintiff; with the reservation that the Court may further consider the matter of interest.

Plaintiffs have petitioned for the allowance of attorney's fees in the amount of $4,000 to be taxed as part of the costs. I am of opinion to reduce this allowance to $2,000.

For the sake of the record, it is stated that in the instances where objections were made to the introduction of evidence during the trial and these objections were taken under consideration, the Court had overruled the objection.