**GREAT NORTHERN RY. CO. v. UNITED STATES.**

**Civ. No. 3586.**

United States District Court
D. Minnesota, Fourth Division.
March 16, 1951.

Edwin C. Matthias, Anthony Kane and Louis E. Torinus, Jr., all of St. Paul, Minn., for plaintiff.

Daniel W. Knowlton, Chief Counsel, Edward M. Reidy, Associate Chief Counsel, and Charlie H. Johns, Attorney, Interstate Commerce Commission, all of Washington, D. C., Donald E. Van Koughnet, Sp. Asst. to Atty. Gen., Dept. of Justice, C. U. Landrum, U. S. Atty., St. Paul, Minn., for defendant.

Art Jardine, Great Falls, Mont., for Montana Western Ry. Co.

Lester H. Loble, Helena, Mont., for Valier Community Club.

Edwin S. Booth, Jr., Helena, Mont., Secretary-Counsel, State of Mont., Board of R. R. Com'rs.

Before SANBORN, Circuit Judge, and JOYCE and DONOVAN, District Judges.

## PER CURIAM.

The Great Northern Railway Company brings this action to set aside the order of the Interstate Commerce Commission dated July 31, 1950, and asking that said Commission be enjoined and restrained from enforcing the same.

In due course answers were made and filed by defendant and Montana Western Railway Company (hereinafter referred to as Montana Western), Board of Railroad Commissioners of the State of Montana, and the Valier Community Club. The cause came on for hearing before a statutory three-judge Court, in the United States Court House, at Minneapolis, Minnesota, on February 20, 1951.

The order of the Commission arises out of two proceedings before it, the first being Finance Docket 16515, entitled, In the Matter of Montana Western Railway Company Abandonment, to which plaintiff was not a party. The second, designated Docket 30325, is entitled, Valier Community Club v. Montana Western Railway Company and Great Northern Railway Company. By the first proceeding applicant sought a certificate of convenience and necessity, authorizing abandonment of its entire line between Valier, Montana, and its junction with the line of the Great Northern Railway Company. The second is a proceeding commenced by a voluntary organization of citizens of Valier against the carriers named, seeking the establishment of reasonable joint rates on grain in carloads from points on the Montana Western to points on the Great Northern, and the establishment of reasonable divisions of such rates.

In its report of July 31, 1950,[1] the Commission sets forth an accurate and full recital of the facts. It appears therefrom that Montana Western was incorporated under the laws of Montana in 1909, and extends from Valier to the junction with the Great Northern at Conrad, a distance of about twenty miles, as compared to 1030 miles from Conrad to Minneapolis via Great Northern. Valier is a hamlet of about 800 inhabitants. There are two nonagency stations on the line at Manson and Williams, of a population of ten and eleven respectively. The approximate area served by Montana Western is about 553 square miles, comprised of a total population of about 2,000. Its bonded indebtedness is $165,000, all of which is owned by the Great Northern, and bears interest at six per cent. from January 1, 1912. The principal and interest remain wholly unpaid. It also owes the Great Northern, as of March 31, 1949, $195,829 for materials and supplies, repairs, labor and money advanced to cover operating expenses. The total indebtedness of the Montana Western to the Great Northern, at the time of the first hearing in July, 1949, was $737,604. Since 1924, the Montana Western's operating losses have been paid by advances from the Great Northern. Its line was not built according to accepted standards of economical maintenance. Untreated cross-ties were laid on the ground with practically no ballast. As a result, drainage is almost nil on the greater portion of the line, and the cross-ties deteriorate rapidly. Its rolling stock consists of one gasoline-electric locomotive, one steam locomotive, with three sets of drivers, and

1. 275 I.C.C. 512.

one flatcar. There are motortruck and motorbus services daily on Federal Highway No. 91 running north and south through Conrad. An oil-surfaced highway runs between Valier and Highway No. 91. The highway distance between Conrad and Valier is 23 miles. A graveled highway runs southwest from Valier, connecting with U. S. Highway No. 89. Most of the grain moves to Minneapolis and Duluth, Minnesota. Most of the farmers in the area served by the Montana Western ship their cattle by truck either to Great Falls, Montana, or to Shelby. The area served by the line produces from 800,000 to 1,000,000 bushels of grain annually. There is a bulk oil storage plant at Williams, but most of the oil stored in this plant is now brought in by motortruck. The key grade is three per cent., and is against the outbound movement, and limits the capacity of the steam locomotive to eight carloads and the gasoline-electric locomotive to two carloads of grain. The rates on grain from points on the line have always been proportional rates based on Conrad and resulted from an agreement made in 1924 after an investigation by the Board of Railroad Commissioners of the State of Montana. Only about five per cent. of the carload tonnage carried by the Montana Western moves on joint through rates with the Great Northern. The foregoing will suffice for the purpose of determining the issues raised in the present case.

The Commission makes no particular point with reference to the reasonableness of the existing rates, and it makes no finding that such rates were unreasonable.[2]

That the Commission is authorized to act on its own initiative in proper cases,[3] and that appropriate probative effect may be given to rate comparisons,[4] may be taken for granted, but it seems obvious that the twenty miles of dilapidated trackage and equipment used by the insolvent Montana Western (constituting 1.9 per cent. of the 1050-mile joint haul to Minneapolis) is withering on the vine of its initial usefulness, and in the face of progress in and adequacy of transportation by motor vehicle over a system of public highways now serving the area.[5] The record of the instant case makes manifest that, except for liberal transfusions of financial aid during the past twenty-five years by the Great Northern, the Montana Western would long since have been dead on its wheels.

Resolving every presumption in favor and support of the order of the Commission, we cannot avoid concluding that prescribing joint through rates on the same level as existing lawful combinations, but with divisions which are unduly favorable to the Montana Western and clearly unfair to the Great Northern, is but a means to the end of assisting Montana Western to meet obvious financial needs. This is expressly prohibited by law.[6]

2. In Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, at page 82, 51 S.Ct. 1, at page 4, 75 L.Ed. 221, the Court, citing cases, says: "The Commission may not change an existing division unless it finds that division unjust or unreasonable." See also Baltimore & O. R. Co. v. United States, 298 U.S. 349, 357, 56 S.Ct. 797, 80 L.Ed. 1209.

3. Title 49, United States Code, Annotated, §§ 13(2), 15(1), (3), (6).

4. Louisville & Nashville R. R. Co. v. United States, 238 U.S. 1, 13, 35 S.Ct. 696, 59 L.Ed. 1177; United States v. Northern Pacific Ry. Co., 288 U.S. 490, 500, 53 S.Ct. 406, 77 L.Ed. 914; Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, 480, 55 S.Ct. 822, 79 L.Ed. 1553.

5. The record discloses that the area is served by a natural gas pipeline, thus depriving Montana Western of the equivalent coal tonnage haul. Oil and cattle are shipped by truck and mixed train passenger service must compete with the modern automobile.

6. Title 49, United States Code, Annotated, § 15(4), contains the following prohibition: "No through route and joint rates applicable thereto shall be established by the Commission for the purpose of assisting any carrier that would participate therein to meet its financial needs." United States v. Missouri Pac. R. Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322; United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 294 U.S. 499, 506, 55 S.Ct. 462, 79 L.Ed. 1023.

That Montana Western is insolvent and is in dire need of financial aid if it is to continue to operate goes without saying. But the record affords no basis for the defendant and interveners forcing the Great Northern to finance this ailing railroad through a discriminatory division of joint rates. If those served by Montana Western feel the need of revitalizing it financially there is no legal barrier to their furnishing the necessary funds for its further operation. We are of the opinion that the Great Northern cannot be compelled, directly or indirectly, to assume that burden.

We think that the order of the Commission is not sustained by the evidence and is contrary to law; and that the relief prayed for by petitioner should be granted.

Petitioner may present findings of fact and conclusions of law consistent with this opinion.