**A. L. MECHLING BARGE LINES, INC., et al.**

v.

**UNITED STATES of America, Interstate Commerce Commission, et al.**

No. 61 C 169.

United States District Court
N. D. Illinois, E. D.

Sept. 18, 1962.

Edward B. Hayes and Wilbur Legg, Chicago, Ill., for A. L. Mechling Barge Lines, Inc.

Richard M. Freeman and Harold E. Spencer, Chicago, Ill., for Chicago Board of Trade.

H. Neil Garson, Associate General Counsel, Robert W. Ginnane, General Counsel, Interstate Commerce Commission, Washington, D. C., John H. D. Wigger, Dept. of Justice, Washington, D. C., for Interstate Commerce Commission.

Richard J. Murphy, Chicago, Ill., for New York Cent. R. Co.

Leo P. Day, Chicago, Ill., Elevator Operator.

Before KILEY, Circuit Judge, and HOFFMAN and AUSTIN, District Judges.

AUSTIN, District Judge.

This is a suit by Mechling Barge Lines, Inc., a common carrier, and several grain elevator operators served by barges, to set aside an order of the Interstate Commerce Commission. The order continued in existence a reduced rail rate for corn and corn products transported on the New York Central Belt Line. The Chicago Board of Trade was permitted to intervene as a plaintiff and the New York Central Railroad and several grain elevator operators on its Belt Line were permitted to intervene as defendants.

The Belt Line west of Kankakee, Illinois, roughly parallels the Illinois River on which the barges operate. The barge lines and elevators served by them are in competition with the Belt Line and elevators served by it for the business of transporting corn from northern and central Illinois to destinations on the eastern seaboard. Some farmers sell their corn to elevators for transportation by barge to an east-west railroad and others sell theirs to elevators for transportation by the north-south Belt Line to a connecting east-west railroad or to merchants in Chicago. The transportation rates are of course very important in the competition.

Prior to the published New Kankakee all-rail combination rate, the through one-factor rates for grain and grain products from Streator on the Kankakee Belt Line to New York were 72.5¢ per cwt.; the Chicago combination from stations on the Kankakee Belt Line consisted of a local rate of 23¢ to Chicago, plus the 49.5¢ reshipping rate east, or 72.5¢ per cwt.; the Kankakee combination rate from stations on its Belt Line to Kankakee and reshipping to the east was also composed of the same rate factors. Thus, the through one-factor rates, the Chicago combination and the Kankakee combination, were all equal.

The proposed new Kankakee combination reduced the rate on corn and corn products from stations on the Kankakee Belt Line to 6¢ on corn milled-in-transit for the purpose of meeting the barge competition on the Illinois River, plus a reshipping rate of 49.5¢ beyond Kankakee to the east. The local, or 6¢, rate was to apply only when the product was destined for shipment to eastern destinations. The local, or 6¢, rate was not applicable to whole corn, nor was the rate to Chicago reduced although the Kankakee combination was available to Chicago processors via Kankakee. Application of the new Kankakee combination resulted in a charge less for the longer than for the shorter distance of transportation in that a lower charge from stations west of Kankakee to the

east was effected than resulted from Kankakee and intermediate origins to the same destinations.

The New York Central Railroad applied to the Commission for approval, to obviate the violations of 49 U.S.C.A. § 4 [1], of a proposed rate. Plaintiffs and the Board of Trade protested the application. The Commission granted temporary authority for immediate application of the rate, but ordered a hearing.

The scope of review to be accorded this order is conceded by all litigants to be governed by the Administrative Procedure Act, 5 U.S.C.A. particularly § 1009(e).[2] Because no dispute exists as to the standards to be applied, this court will allude briefly to the basic concept of such review. In Rochester Tel. Corp. v. United States, 307 U.S. 125, 140, 59 S.Ct. 754, 762, 83 L.Ed. 1147 (1938), the scope of review is stated to be as follows:

"* * * Only questions affecting constitutional power, statutory authority and the basic prerequisite of proof can be raised. If these legal tests are satisfied, the Commission's order becomes incontestable. Interstate Commerce Comm'n v. Illinois Central R. Co., 215 U.S. 452, 470, [30 S.Ct. 155, 54 L.Ed. 280], Interstate Commerce Comm'n v. Union Pacific R. Co., 222 U.S. 541, [32 S.Ct. 108, 56 L.Ed. 308]."

Plaintiffs claim error in the refusal of the Examiner and the Commission to admit evidence that the proposed rate was discriminatory, unjust and unreasonable, in violation of the Transpor-

tation Act; [3] and that the rate failed to preserve the inherent advantage that the National Transportation Policy [4] gives the water carrier. The evidence was excluded for the reason that it was not appropriate in this "Fourth Section" proceeding although it would be pertinent upon a complaint under Section 13(1) [5] or a Commission investigation under Section 15(1).[6] Plaintiffs argue that the Examiner and Commission were bound not to grant the application under Section 4 if to do so involved violation of the other sections noted. We are referred to the Commission's conclusion that granting the application "would not be disharmonious with the other provisions of the Act," to show what the plaintiffs contend is an inconsistency.

We may disregard that conclusion as surplusage and we see no error in the exclusion of the evidence of violation of other sections of the Act. The relief granted is permissive only and the evidence offered was not relevant in this Fourth Section proceeding. United States v. Merchants & M. Traffic Ass'n, 242 U.S. 178, 37 S.Ct. 24, 61 L.Ed. 233 (1916). Due regard was given to the policy and statutory scheme of the Act within the limits afforded by Section 4 and under that Section the Commission is not required to make specific ultimate findings that a rate is lawful and not discriminatory. The water carrier and other plaintiffs have failed to utilize the provisions of sections of the Act which afford the Commission the proper scope for such determination. United States v. Merchants & M. Traffic Ass'n, 242 U.S.

1. 49 U.S.C.A. § 4. Long and short haul charges; competition with water routes.

2. Section 1009(c) provides for the scope of judicial review of agency action to ensure that such action is not unlawfully withheld or unreasonably delayed, or not in accordance with law, procedural or substantive, and that such action is warranted in fact and supported by substantial evidence.

3. 49 U.S.C.A. § 15(1).

4. The declared national transportation policy is to provide, preserve and promote the "fair and impartial regulation of all modes of transportation * * * to recognize and preserve the inherent advantages of each," in order to ensure a national transportation system adequate to meet the needs of commerce and national defense. 49 U.S.C.A. note preceding Section 1.

5. 49 U.S.C.A. § 13(1).

6. 49 U.S.C.A. § 15(1).

178, 188, 37 S.Ct. 24, 61 L.Ed. 233 (1916); Koppers Co. v. United States, 132 F.Supp. 159, 163 (D.C.Pa.1955); Florida Citrus Comm'n v. United States, 144 F.Supp. 517, 526 (D.C.Fla.1956); Seatrain Lines v. United States, 168 F.Supp. 819, 825 (D.C.N.Y.1958).

The Commission found that the "competitive situation which prevailed prior to the proposed rate between the all-rail and barge-rail rates" needed an adjustment under Fourth Section relief. It required a showing that the proposed rates are "reasonably compensatory and no lower than necessary to meet the competition." It found that the evidence that the proposed rate was compensative and set forth the details supporting that finding, and concluded that the New York Central had shown "a special case within the meaning of Section 4[7] of the Act by nature of actual and compelling competition," and that the rate was no lower than necessary to meet that competition, was not destructively competitive and would not impose an undue burden on other traffic.

The question raised upon these findings and conclusions is whether the Commission was correct in considering the entire combination rate within the compensatory test of Section 4, **or** whether, as the Hearing Examiner did, it should have confined such test to the local rate from Moronts to Kankakee, i. e., the 6¢ rail charge for the trip from the western origins of the Kankakee Belt Line to Kankakee. Admittedly, the only rate competitive to the barge route is the local or proportional rate to Kankakee, there having been no change in the 49.5¢ reshipping rate to the east. However, as the Commission emphasized, the 6¢ charge is not collected separately.

When shipments originate west of Kankakee they are shipped to Kankakee via the local or flat rate of 23¢ and only when there is a reshipment for corn milled-in-transit to points east of Kankakee will the 6¢ rate be applied. Thus, on reshipment east, there is adjustment made giving recognition to through shipping by reducing the flat or local rate to the 6¢ figure. Consequently, the 6¢ does not exist as a separate charge, but exists only when the combination rate comes into being and a departure from the prohibition of Section 4 occurs when the 49.5¢ reshipping rate is applied. It is clear from the legislative history of this section that Congress was concerned with the long-haul being reasonably compensatory to the carrier and that the Commission so find to grant Section 4 relief. See Detroit Board of Trade v. Grand Trunk Railway, 2 I.C.C. 199, 202 (1888); Imperial Coal Co. v. Pittsburgh & L. E. R. Co., 2 I.C.C. 436, 445 (1889); and Sheldon Axle & Spring Co. v. Lehigh V. R. R. Co., 53 I.C.C. 43, 44 (1919). The Commission was correct in considering the combination rate and not the single 6¢ proportional.

The final question is whether the report and the findings and conclusions are supported by substantial evidence in the record as a whole. A departure from Section 4 is accorded only in special cases. The record is replete with exhibits and testimony which show that prior to the changed rate almost all free corn, as distinguished from government corn, grown in the geographical area involved was shipped via barge to Chicago and thence by rail to its eastern termini. This obvious disparity of corn shipment was found to exist by the Hearing Examiner and the Commission. 310 I.C.C. 438–441. That a special case ex-

---

7. Section 4 of the Transportation Act provides: " * * * That upon application to the Commission and after investigation, such carrier, in special cases, may be authorized by the Commission to charge less for longer than for shorter distances for the transportation of * * * property * * * but in exercising the authority conferred upon in this proviso, the Commission shall not permit the establishment of any charge to or from the more distant point that is not reasonably compensatory for the service performed; and no such authorization shall be granted on account of merely potential water competition not actually in existence * * *."

ists by virtue of actual and compelling competition has been recognized. In re Louisville & Nashville R. R. Co., 1 I.C.C. 31, 78 (1887); Intermountain Rate Cases, supra; Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919); Nepheline Syenite from Ontario, Canada to the East, 308 I.C.C. 561, 564–565 (1959).

■ A reasonably compensatory rate was defined by the Commission in the Transcontinental Cases of 1922, 74 I.C.C. 48, 71, as follows:

"* * * We are of the opinion and find that in the administration of the fourth section the words 'reasonably compensatory' imply that a rate properly so described must (1) cover and more than cover the extra or additional expenses incurred in handling the traffic to which it applies; (2) be no lower than necessary to meet existing competition; (3) not be so low as to threaten the extinction of legitimate competition by water carriers; and (4) not jeopardize the appropriate return on the value of carrier property generally, as contemplated in Section 15(a) of the act."

■ These criteria have received judicial approval. See Dixie Carriers v. United States, 143 F.Supp. 844 (D.C.Tex. 1956). In the instant case comparative earnings, rate levels and operating costs were submitted to support the compensativeness of the proposed rate. 310 I.C.C. 437, 448–449. This was a proper formula to support the Commission's finding. Federal Power Comm'n v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037 (1942); United States v. Northern Pacific Ry. Co., 288 U.S. 490, 500, 53 S.Ct. 406, 77 L.Ed. 914 (1933); Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, 480, 55 S.Ct. 822, 79 L.Ed. 1553 (1935); City of Harrisonburg v. Chesapeake & O. Ry. Co., 34 F.Supp. 640, 644–645 (D.C.Va.1940); Tidewater Associat-

ed Oil Co. v. A. T. & S. F. Ry. Co., 278 I.C.C. 586, 589; Summer Co. v. Erie R. Co., 262 I.C.C. 43, 46. In finding that the rate was no lower than necessary, the Commission also examined the bid prices of the two modes of transportation and the effect they had on those country elevators located between the Illinois River and the Belt. In finding that the rate was not destructive of competition nor unduly burdensome, the Commission had before it evidence of the amount of corn shipped via the two modes of transportation in the periods here in question.

■ In scrutinizing the evidence upon which the order is premised, the court will not consider the "expediency or wisdom of the order, or whether, on like testimony, it would have made a similar ruling". Interstate Commerce Comm'n v. Union Pacific R. Co., 222 U.S. 541, 547, 548, 32 S.Ct. 108, 110, 111, 56 L.Ed. 308 (1911); Virginian Railway Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463 (1926); United States v. Pierce Auto Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1945), but will consider only whether in the record as a whole there is substantive evidence to support the order. 5 U.S.C.A. § 1009(e); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950).

■ There is no challenge of the detailed facts underlying the findings or conclusions and we find that there is the requisite substantial basis for the findings and conclusions. Rochester Tel. Corp. v. United States, 307 U.S. 125, 140, 59 S.Ct. 754, 83 L.Ed. 1147.

We conclude that the order in question was within the statutory power of the Commission, that it is supported by findings and conclusions based on substantial evidence, and that no prejudicial error occurred in the hearings before the Examiner and Commission. For these reasons we think the complaint should be dismissed. The order of dismissal is being entered this day.