**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 153, GLASS BOTTLE BLOWERS ASSOCIATION OF the UNITED STATES AND CANADA, AFL-CIO, (GBBA), Defendant.**

**Civ. A. No. 64-278.**

United States District Court
W. D. Pennsylvania.

Aug. 26, 1965.

---

Gustave Diamond, U. S. Atty., Stanley Greenfield, Asst. U. S. Atty., Louis Weiner, Regional Atty., Marshall H. Harris, Deputy Regional Atty., U. S. Dept. of Labor, Chambersburg, Pa., for plaintiff.

Ben Paul Jubelirer, Stuart E. Savage, Pittsburgh, Pa., Albert K. Plone, Plone, Tomar, Parks & Seliger, Camden, N. J., for defendant.

DUMBAULD, District Judge.

The question for decision here is whether a provision requiring attendance at 75% of the regular meetings of a union for a two-year period since the last previous election in order to be eligible as a candidate for office in the union is or is not among the "reasonable qualifications" permitted by Section 401(e) of the Labor-Management Reporting and Disclosure Act of September 14, 1959 (commonly known as the Landrum-Griffin Act), 73 Stat. 532, 29 U.S.C. § 481 (e).

That section provides:

"(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and *every member in good standing shall be eligible* to be a candidate and *to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed)* and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof." [1]

Section 402, 29 U.S.C. § 482, provides enforcement procedure. Upon investigation of a complaint duly filed by a member of a labor organization, the Secretary of Labor, if he finds probable cause to believe that a violation of the election provisions of the Act has occurred and has not been remedied, may bring a civil

---

[1]. Italics supplied. Section 504, not pertinent here, prohibits holding of union office by Communists or convicts guilty of certain crimes. Incidentally, section 504 was held unconstitutional by the Supreme Court in United States v. Brown, 381 U.S. 437, 449, 85 S.Ct. 1707, 14 L. Ed.2d 484 (1965) as being a bill of attainder (or legislative trial) at least as far as Communists are concerned. Perhaps convicts can still be excluded from union office [as they can be from the practice of medicine, Hawker v. People of State of New York, 170 U.S. 189, 191, 196, 18 S.Ct. 573, 42 L.Ed. 1002 (1898)], as they must necessarily have had a judicial trial.

action, against the union as an entity, to set aside the election and direct the conduct of an election under supervision of the Secretary.

If, upon a preponderance of the evidence after a trial upon the merits, the Court finds that the violation of Section 401 "may have affected the outcome of an election", the Court shall declare the election to be void and direct the conduct of a new election under the supervision of the Secretary.

It will be noted that the Court, in order to declare the election void, must find not only the existence of a violation but that the violation may have affected the outcome of the election.

The Court is vested with specific statutory jurisdiction in a proceeding *de novo* styled a civil action. This remedy is exclusive. Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

The Court is not exercising the function of judicial review of an administrative agency, where the doctrine of "primary jurisdiction" would apply, and the scope of review would ordinarily be limited to the question of whether there was error or lack of substantial evidence to support the agency's conclusions. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 442, 27 S.Ct. 350, 51 L.Ed. 553 (1907); Rochester Tel. Corp. v. United States, 307 U.S. 125, 139–140, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); Universal Camera Corp. v. NLRB, 340 U.S. 474, 477–488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Here it can in no wise be contended, as Judge Learned Hand does in the instance of due process, that the courts are usurping power of the same sort which legislators exercise (though such usurpation is justified in order to prevent frustration of the governmental enterprise). Hand, The Bill of Rights, 29, 39 (1958). In our situation the power of the courts *is* expressly delegated by statute, and simply serves to bring into sharper focus a telescope which has already been pointed by Congress toward the desired objective. United States v. Curtiss-Wright Corp., 299 U.S. 304, 329, 57 S.Ct. 216, 81 L.Ed. 255 (1936).

We are therefore authorized to exercise a legitimate discretion with respect to the intrinsic propriety, wisdom, or expediency of the regulations under consideration when determining their reasonableness, and not merely to pass judgment on the issue of bare power as to whether another agency of government has acted *ultra vires*. Stated differently, the distinction may be illustrated by saying that our function is somewhat comparable to an appeal in equity as distinguished from a writ of error, or to a direct appeal as distinguished from the collateral review permitted under the traditional or classical writ of habeas corpus. We must determine for ourselves on the merits the substantive question whether the result reached is right rather than merely the formal question whether someone else had power to pronounce and declare that it was right.

The By-Laws of defendant Local Union No. 153 of the Glass Bottle Blowers Association provide, in Article 2, sec. 1 that regular meetings will be held the second Thursday of each month at 8:00 P. M., unless otherwise directed. Articles 3 and 4 provide that all officers shall be elected, by secret ballot, for a term of two years. [This is in conformity with the requirements of 29 U.S.C. § 481(b)].

Article 4, sec. 12 is the crucial provision in this case. It ordains that: "No members [sic] may be a candidate unless said member is in good standing and has attended seventy-five (75%) of the regular local meetings since the last local election". This is supplemented by Art. 4, sec. 13, which provides that: "In cases where members have to work at the time of meetings, and so notify the Recording Secretary, they shall be marked present at such meetings, provided they notify the Secretary in writing within seventy-two (72) hours following the meeting".

Local 153 has approximately 500 members, of whom 11 (or 2.2 percent) were eligible for office at the challenged elec-

tion held on October 18, 1963. The eligible list of eleven included the names of one Paul Gamber ("if he attends the next 2 meetings") and of one John L. Miller (with the notations "Under investigation" or "Under consideration by International"). The International on August 8 and 21, 1963, informed Miller that he was ineligible, by reason of failure to meet the attendance requirement. Miller had been Treasurer, and was proposed for nomination as President and as Treasurer at the 1963 election, but held to be disqualified under the By-Laws. Upon Miller's complaint, the Secretary of Labor filed the instant suit.

By reason of rotation in shifts, 469 members of the union are required to be at work on the date of union meetings at least six times during the two-year period of eligibility determination. Defendant computes that this means that as to 93.8% of the members, by virtue of the excusal provisions of Art. 4, sec. 13, the 75% attendance requirement is reduced to a 50% requirement (Brief, p. 3). However, with respect to 31 workers not on rotating shifts, the 75% requirement is fully applicable without any abatement.

In view of the policy of the Act to promote equal rights among union members [29 U.S.C. § 411(a) (1)] and of the terms of Section 401(e) itself, it would appear that the rights of individual members as such are at issue, and hence that we must consider the effect of the challenged By-Law in accordance with its literal terms, and as applied to the minority of members upon whom it bears hardest. Shelley v. Kraemer, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Lucas v. Forty-Fourth General Assembly of State of Colo., 377 U.S. 713, 736–737, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).

Plaintiff urges in support of its view the following language from Regulations issued by the Secretary issued on December 12, 1959, 29 C.F.R. 452.7(b):

"(b) The question of whether a qualification is reasonable is a matter which is not susceptible to precise definition and in the last analysis will be determined by the courts. Under certain circumstances a prerequisite for such candidacy may on its face appear to be reasonable, but this would not be controlling if, as a matter of fact, the effect of its application would be unreasonable and inharmonious with the intent of the Act's election provisions. For example, a requirement that to be eligible to be a candidate for office an individual must have been a 'member in good standing' for a prescribed period of time, such as two or three years, would not be, in many instances, an unreasonable qualification. However, should the actual effect of such qualification in a particular case be to disqualify from holding office all but a handful of the labor organization's members its reasonableness would be subject to serious question."

As plaintiff contends, the views of the Secretary are of great weight. Not only does this Court have great respect for the Secretary, but this Court agrees 100% with every word that is said in the quoted passage. The trouble is that all that is said is that the question of reasonableness is a difficult one and must ultimately be decided by the courts in the light of the facts in particular cases. We agree.

Defendant argues that the test of reasonableness here is the same as that when the constitutionality of legislation is challenged under the due process clause: in other words, that the "rational basis" rule applies. That is to say, the By-Law as adopted by the union must be upheld if a reasonable mind would have a good reason for adopting it. It must be upheld if it is rationally relevant to a legitimate regulatory purpose. As stated by Chief Justice Warren in Bolling v. Sharpe, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954): "Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective". A court does not act as a "superlegislature"

to weigh the wisdom of regulations. Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 423, 427, 72 S.Ct. 405, 96 L.Ed. 469 (1952); Ferguson v. Skrupa, 372 U.S. 726, 729–732, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

It is then argued that such a good reason is to encourage participation in union affairs and attendance at meetings in order to become familiar with the workings of the organization before undertaking to serve as a union officer.

Another analogous situation in which courts pass on "reasonableness" is in Antitrust cases. Here, however, the insertion of that standard into the legislation as enacted by Congress is a pure judicial creation devised first by Mr. Chief Justice White in Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 60, 63–67, 31 S.Ct. 502, 55 L.Ed. 619 (1911).

More to the point is the analogy to the function of the Interstate Commerce Commission, and similar regulatory agencies, in establishing "just and reasonable" rates. 49 U.S.C. § 15. In other words, Congress itself enacts a non-specific standard, the application of which to specific situations is entrusted to the judicial process of inclusion and exclusion.

The Court therefore in a particular case must not only consider the existence *vel non* of a scintilla of rational support for the rule put forth, but must (by a process similar to that prescribed in the Universal Camera case), take into consideration the entire situation presented by the record, and give due weight to every aspect of the facts established. In other words, the Court must also inquire whether the legitimate purpose sought to be achieved could be attained in a manner less destructive of other legally protected interests. Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 162, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Henry v. State of Mississippi, 379 U.S. 443, 447–449, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). We note that there may be a fairly extensive "zone of reasonableness" and that comparison with comparable practices may be a standard for determining reasonableness. State of Georgia v. Pennsylvania R. R. Co., 324 U.S. 439, 460–461, 65 S.Ct. 716, 89 L.Ed. 1051 (1945); Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, 480, 55 S.Ct. 822, 79 L.Ed. 1553 (1935).

Moreover, the determination must seek to give effect to the policies of the Act. Reasonableness is not to be assessed *in vacuo*, but in the light of the purposes which the Congress sought to achieve and the evils which it sought to eliminate. Union democracy, effective self-government, abolition of oligarchical cliques and self-serving union officers were in the forefront of Congressional thinking. Section 401 itself seeks to open the path of eligibility to office to all union members in good standing, except where restrictions of reasonable character, and uniformly imposed, may be appropriate. Mamula v. United Steelworkers, 3 Cir., 304 F.2d 108, 110–111 (1962); 86th Cong. 1st Sess. Sen.Rep. No. 187, p. 20, appearing at p. 16 of Vol. 1 of Legislative History of the Act, published by the NLRB, Washington, 1959, U.S.Code Congressional and Administrative News, p. 2318. It must also be remembered that restrictions on eligibility also constitute a corresponding restriction on the right of choice by other members. Fogle v. United Steelworkers, 230 F. Supp. 797, 798 (W.D.Pa.1964).

Plaintiff argues that the 75% requirement has no rational relation to any legitimate labor union objective. This contention in its broad form is obviously untenable, as it is a very proper objective to encourage attendance at union meetings, and to require office holders to have acquired a sufficient familiarity with union affairs to be properly qualified to discharge their trusts effectively and in keeping with the sentiments of the membership. Past conduct is often a proper test of future fitness. [See cases collected in Dumbauld, The Constitution of the United States (1964) 199–200.

Plaintiff stands on more solid ground in arguing that the requirement *goes too far*. This contention is three-pronged:

(1) 75% is too high a percentage; (2) the provision for excuses is too rigid, being limited only to work on the job during meetings; (3) the effect of the rule as applied here results in "only a handful" of eligibles (2.2% of membership qualified).

■ To select a particular percentage of attendance as being reasonable and hence permissible is akin to the task of determining what percentage of market control is necessary to establish the existence of a monopoly. On this issue a revered Judge, Learned Hand, once said "it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty-three percent is not." Ninety was enough, however. United States v. Aluminum Co. of America, 148 F.2d 416, 424 (C.C.A. 2, 1945). We conclude that 75 is too high a percentage when combined with the strict rule regarding excuses.

To be reasonable a rule must give appropriate recognition to human nature and the normal needs of a workman in his everyday life. Union members can not be expected to devote undeviating attention to union business, to the neglect of their health, family obligations, vacations and the usual pleasures and vicissitudes of life. They do not form a military community or a religious order, separated from the world at large.

A rule which limits the eligible group to 2.2% of the membership seems to be too harsh. The only judicial precedent cited by counsel is Martin v. International Brotherhood of Boilermakers, etc., W.D.Pa., 245 F.Supp. 325, where on June 26, 1963, my esteemed colleague Judge Willson upheld the reasonableness of the eligibility requirements of that union's constitution. However, the requirement there was only one meeting out of each quarter of the calendar year and the quarter immediately preceding nominations. Moreover, the provision for excuses was liberal: it recognized "personal illness, International or District or Local Lodge duties, regular employment or some other unavoidable situation". There 14 members out of a total of 175 were found to be qualified (a figure in excess of 10% of the membership).

Under these circumstances, Judge Willson said (and I agree):

"Plaintiff, however, seems to make a blank charge that the amendment requiring the attendance at one meeting during each of the five quarters to become eligible to hold office is, per se, an unreasonable regulation. However, this contention, if seriously made, is rejected because it seems very clear to the court that the regulation is reasonable. Certainly there is nothing illegal about it, not [sic] does it appear burdensome. The rule is almost the minimum attendance requirement. It simply requires that a member attend one meeting in each three month period. But, it is to be noticed that he may be excused from that by illness or if his work interferes. The language which justifies no attendance is broad. It says:

'and (d) have attended at least one (1) meeting out of each quarter of the calendar year and the quarter immediately preceding nominations for office unless prevented by personal illness, International or District or Local Lodge duties, regular employment or some other unavoidable situation.' Article XXVIII, p. 111)

To hold that such a regulation is unreasonable would hold in effect that there can be no attendance requirement whatever in this union. I find the regulations as adopted at the International Convention to be reasonable in all respects."

In order for there to be a real choice in the selection of officers, a system of screening ought to produce as eligibles at least twice the number of officers to be elected. Out of the air, I should take 10 percent of the membership as the minimum number from which nominations and elections are to be made.

Art. 3, sec. 1 of defendant's By-Laws provides for the election of ten officers.

The eligible list included only eleven names (including Gamber and Miller, thus ultimately nine or ten). This did not give the members a chance to choose between two full slates. In fact there were no candidates for four offices, and the present incumbents thereof are serving by appointment to fill vacancies, in apparent violation of Art. 3, sec. 8 which calls for a special election from eligible candidates. But the paucity of eligible candidates would result in impossibility of performance if the procedure of Art. 3, sec. 8 were adhered to. The majority of the members preferred to avoid the expense of a special election and International representative Bonus recommended that the appointed officers continue to serve as "those members appointed will cooperate with us, if necessary, at anytime." Stipulation, Ex. D, E, and G.

Considering the combined effect of the three objections urged by plaintiff, we conclude that the requirements imposed by the By-Laws are not "reasonable qualifications" within the meaning of Section 401(e).

That is not the end of the matter, however. To direct a new election the Court must find that the violation of Section 401(e) "may have effected the outcome of an election". As was true in Wirtz v. Local 11, Intern. Hod Carriers' Bldg., etc., Union 211 F.Supp. 408, 413 (W.D. Pa.1962), this factor of causation has not been adequately established.

The evidence shows that complainant Miller voluntarily absented himself from meetings on occasions not justified by sickness or other unavoidable emergency, and thus his failure to qualify was not due to the existence of the unreasonable requirements of the By-Laws but to his own voluntary unwillingness to comply therewith.

Hence it seems inadvisable to decree the holding of a new election. It will be preferable to await appropriate action enabling the next election to be held in full conformity with the Act as judicially expounded.

## JUDGMENT

And now, this 26th day of August, 1965, after trial and hearing argument of counsel and receipt of briefs, for the reasons set forth in the foregoing opinion,

It is adjudged, decreed, and finally determined that the action herein be and the same hereby is dismissed, the Court retaining jurisdiction of the cause for such further action, if any, as may be required in the event that the Secretary shall have found cause to file a complaint by reason of alleged violations of the Act of similar character in connection with the next regularly ensuing election of officers of defendant union.