**SEATRAIN LINES, Inc., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Pennsylvania Railroad Company et al., Intervening Defendants.**

United States District Court
S. D. New York.
Dec. 22, 1958.

---

Chadbourne, Parke, Whiteside & Wolff, New York City, for plaintiff, George A. Spater, Ralph D. Ray, Alan S. Kuller, New York City, of counsel.

Victor R. Hansen, Asst. Atty. Gen., Arthur H. Christy, U. S. Atty., Robert J. Ward, Asst. U. S. Atty., New York City, James E. Kilday, E. Riggs McConnell, Attys., Dept. of Justice, Washington, D.C., for the United States.

Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, H. Neil Garson, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D.C., for Interstate Commerce Commission.

Edward R. Gustafson, Richard J. Murphy, Chicago, Ill., Eugene E. Hunt, Balti-

more, Md., Robert D. Brooks, New York City, for intervening defendants.

Before SWAN, Circuit Judge, RYAN and BRYAN, District Judges.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff is a common carrier by water certified by the Interstate Commerce Commission for transportation of commodities between the Port of New York and the Ports of New Orleans, Texas City and Savannah. It sues, pursuant to 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, and 5 U.S.C.A. § 1009, to set aside two orders of the Commission dated August 14, 1958, made under Section 4, subdivision 1 of the Interstate Commerce Act (49 U.S.C.A. § 4(1), which authorized the intervening rail carrier defendants to charge lower rates for the transportation of certain iron and steel articles between eastern points of origin and southwest gulf ports than is charged to intermediate inland points. Plaintiff also seeks a direction that the Commission suspend the operation of tariffs filed by the rail carriers which embodied rates approved by its Fourth Section orders.

On August 15, 1958 the District Judge to whom this application was first made, after hearing plaintiff and the Commission, issued a temporary restraining order staying the operation of the Fourth Section orders and directing the Commission to suspend the filed tariffs based thereon pending further order of the court.

On June 9 and 13, 1958 the intervening rail carriers filed two applications with the Interstate Commerce Commission seeking relief from the long and short haul provisions of Section 4 with respect to rates for the carriage of iron and steel articles, carload minimum 60,000 lbs., from the eastern points of origin to southwest gulf ports. Concurrently they filed tariffs embodying the reduced rates which they sought to have approved by their Section 4 applications. These tariffs were scheduled to become effective on July 15, 1958.

On June 28, 1958 plaintiff petitioned the Commission for denial of the Fourth Section applications and for a suspension of the filed tariffs embodying the proposed lower rates. It specifically requested a hearing.

The rail carriers then postponed the effective date of their proposed filed tariffs from July 15, 1958 to August 15, 1958 and filed a reply to plaintiff's petition.

The matter was considered not by the Fourth Section Board of the Commission which normally passes on Fourth Section applications and which had denied a prior application made by the rail carriers for this same relief in February of 1958. Instead the matter was transferred to Division 2 of the Commission composed of three Commissioners, which, on August 14, 1958, by a divided vote, granted the Fourth Section applications and declined to suspend the filed tariffs. At 2 o'clock on the same day plaintiff filed a petition for reconsideration of these determinations by the entire Commission and sought to postpone the effective date of the tariffs for 30 days pending possible judicial review. This was denied by the full Commission two hours later, at 4 p. m. of the same afternoon, and the tariffs embodying the proposed rates became effective as scheduled at 12:01 a. m. on August 15, 1958.

The plaintiff filed the instant suit the next morning and the temporary restraining order was then issued.

Under Section 4(1) of the Interstate Commerce Act it is unlawful for carriers to charge greater compensation for a shorter than for a longer distance without express authorization from the Commission. Application for such authorization may be granted only "after investigation" and "in special cases", and the rates to be charged must be "reasonably compensatory".[1]

1. Section 4(1) in so far as it is relevant here provides:

"It shall be unlawful for any common carrier * * * to charge or receive any greater compensation in the aggregate for the transportation of pas-

Plaintiff contends that the Fourth Section orders are invalid because the Commission refused to hold a hearing on its petition for denial of the rail carriers' applications as plaintiff requested, and because the orders are not supported by the necessary findings and do not show sufficient basis for their issuance. Plaintiff also urges that since the tariffs filed by the rail carriers which became effective on August 15, 1958 were dependent upon the granting of the Fourth Section applications and were "unlawful" unless such authorization was obtained, they necessarily must fall if the Fourth Section orders are vacated.

Defendants, on the other hand, maintain that plaintiff has no standing to challenge the Fourth Section orders, that they are not reviewable, that no hearing was required upon the Fourth Section applications, and that the orders are sufficiently supported by such findings as are necessary and are valid. They also maintain that the court was without authority to issue the temporary restraining order and particularly the provision of that order which directs the Commission to suspend the tariffs filed by the carriers which were to become effective on August 15. They urge that the temporary restraining order should be vacated forthwith.

We have concluded that the Fourth Section orders must be vacated and the matter remanded to the Commission.

 1. The plaintiff has standing to challenge the Fourth Section orders in this action.

Plaintiff holds a certificate of convenience and necessity as a common carrier by water under Part III of the Interstate Commerce Act, 49 U.S.C.A. § 901 et seq. It is engaged, *inter alia*, in transporting iron and steel products from the Port of New York to the Gulf Ports of New Orleans, Louisiana, and Texas City, Texas. Such products are transported by rail from the producers' plants to the plaintiff's dock in Edgewater, New Jersey, where the freight cars carrying them are loaded on to the plaintiff's ships. At the Gulf Ports the cars are unloaded and there is another short rail haul to destination. The advantages of plaintiff's type of service were recognized in United States v. Pennsylvania R. Co., 323 U.S. 612, 617, 65 S.Ct. 471, 89 L.Ed. 499.

Prior to the orders of which plaintiff complains its rail-water rates were less than the intervening rail carriers' all-rail rates. The new all-rail rates which became effective on August 15, 1958 are substantially less than plaintiff's rates and will, it is alleged, cause plaintiff irreparable damage.

As a certified water carrier plaintiff is entitled to protection under the declared policy of the Transportation Act of 1920, Ch. 91, 41 Stat. 456, and the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. Its interests are directly and vitally affected by the Commission's orders. It was an adversary party to the proceedings before the Commission and fully and properly preserved its rights.

The plaintiff water carrier and the defendant rail carriers are competitors for the iron and steel traffic affected by the rates authorized by the Commission. The reduced long haul rates authorized will affect a substantial proportion of the

sengers, or of like kind of property, for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through rate than the aggregate of the intermediate rates * * * : *Provided,* That upon application to the commission such common carrier may in special cases, after investigation, be authorized by the commission to charge less for longer than for shorter distances for the transportation of passengers or property; and the commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section; but in exercising the authority conferred upon it in this proviso the commission shall not permit the establishment of any charge to or from the more distant point that is not reasonably compensatory for the service performed; * * * *."

plaintiff's business and cause it serious loss.

Plaintiff is a person "adversely affected or aggrieved" by the Commission action within Section 10(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(a). It also has standing to maintain this action quite apart from these provisions. See The Chicago Junction Case—Baltimore & Ohio Railroad Co. v. United States, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667; Dixie Carriers v. United States, D.C.S.D.Tex., 143 F.Supp. 844, upon the suggestion of mootness judgment vacated and case remanded with directions to dismiss the complaint, Atchison, T. & S. F. Ry. Co. v. Dixie Carriers, Inc., 355 U.S. 179, 78 S.Ct. 258, 2 L.Ed.2d 186; Pacific Inland Tariff Bureau v. United States, D.C.D.Or., 129 F. Supp. 472, 477.

2. The Fourth Section orders before us are reviewable.

■■ Plaintiff complains that it is aggrieved by the Commission's failure to grant it a hearing and in two other particulars. First plaintiff urges that the Commission failed to make the findings necessary to support its conclusions that these are "special cases" and that the rates proposed are "reasonably compensatory". Secondly, it complains that its own competitive position is adversely affected by the Fourth Section orders which it alleges unduly and unjustly discriminate against it.

The only questions presented for investigation by the Commission under Section 4 are whether there is a "special case" and whether the proposed rates are "reasonably compensatory". In so far as a Fourth Section order of the Commission determines that there is a "special case" and that therefore an exception from the prohibition of Section 4 should be granted, the order constitutes "final action" by the Commission on these questions within the meaning of Section 10(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(c).

However, Section 4 does not contemplate that there shall be a determination in a Section 4 proceeding as to whether the rates charged are unduly discriminatory against a competing water carrier. This question must be raised by proceedings under Sections 13 and 15 of the Interstate Commerce Act. In such proceedings a hearing must be held at which all parties affected, carriers, shippers and communities, can be heard and their respective interests appropriately weighed and balanced by the Commission.

Thus, in so far as the plaintiff claims discrimination against it resulting from the new authorized rates, it has not exhausted its administrative remedies because it has not petitioned for a hearing under Sections 13 and 15 at which such claims would be determined. But as to matters within the contemplation of Section 4, viz., findings "after investigation" of "special case" and rates "reasonably compensatory", plaintiff has no further administrative remedies and the action of the Commission is final. Its orders are reviewable to the extent necessary to determine whether the procedure followed by the Commission was lawful and whether on their face they disclose sufficient basis for their issuance to comply with the limited requirements of Section 4.

Mr. Justice Brandeis' opinion in United States v. Merchants' & Manufacturers' Traffic Ass'n, 242 U.S. 178, 37 S.Ct. 24, 61 L.Ed. 233, on which defendants heavily rely, merely holds that Fourth Section orders are not reviewable as to their discriminatory effect on particular communities and that communities claiming such discrimination are relegated to appropriate proceedings under Sections 13 and 15. But the case does not hold that Fourth Section orders are not reviewable on the question of whether the procedures required by Section 4 have been followed and whether they are lawful and proper under that section. In fact, Mr. Justice Brandeis' later opinion in The Chicago Junction Case—Baltimore & Ohio Railroad Co. v. United States, supra, 264 U.S. at pages 263–264, 44 S.Ct. at pages 318–319—indicates that they are to this extent reviewable.

So here plaintiff is relegated to proceedings under Sections 13 and 15 in so far as its claim of undue discrimination against it is concerned. But it is entitled to a review of the Fourth Section orders to determine whether the procedure which the Commission followed in granting them was lawful and whether they have the procedural basis required by the statute. The two Fourth Section orders before us here are reviewable to this extent. Cf. Dixie Carriers v. United States, supra.

3. The Commission was not required to hold an adversary hearing on the Fourth Section applications or on plaintiff's petition for their denial.

There is no express requirement for a hearing in Section 4, Subdivision (1) which merely provides that the Commission may grant relief "after investigation". However, there are such express requirements not only in numerous other sections of the Act,[2] but also in the second subdivision of Section 4 itself.

Subdivision (2) of Section 4 deals with competition of railroads with water routes. It provides that where a railroad in competition with a water carrier has once reduced its rates on the carriage of freight to or from competitive points "it shall not be permitted to increase such rates unless *after hearing* by the commission it shall be found that such proposed increase rests upon changed conditions other than the elimination of water competition".

It is highly significant that whereas the first subdivision of Section 4 uses the phrase "after investigation", the second subdivision uses the phrase "after hearing". Such use of different phraseology in the same section of the same Act necessarily leads to the conclusion that the two phrases do not have the same meaning. See Jordan v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. 192, 169 F.2d 281. The "investigation" contemplated by the first subdivision of Section 4 is plainly different from the "hearing" contemplated by the second subdivision and "investigation" as so used cannot mean "hearing".

The rules of the Commission do not require a hearing on Fourth Section applications. Its most recent rules of procedure under Section 4 adopted on August 11, 1958, effective August 1, 1958, contain no explicit statement on the right to have a hearing in contested cases. Fourth Section Order 18,900; see 23 Fed.Reg. 2969, 2970–2971 (May 2, 1958) § 143.80(f) (h). While the early rules of practice of the Commission contemplated a hearing on such applications "upon the request of any interested party" (88 I.C.C. 766) it appears that it has not been the Commission's practice for many years to have hearings in most Fourth Section applications, though apparently it granted a hearing in most of the cases where a protest was filed. The Commission is not, however, obligated by its rules or practice to grant a hearing.

As Mr. Justice Brandeis pointed out in United States v. Merchants & Manufacturers Traffic Ass'n, supra, Fourth Section approval by the Commission is permissive only. The Commission is called upon to determine only the limited questions of whether this is a "special case" and whether the proposed rates are "reasonably compensatory". All questions as to the effect of the rates upon competing carriers, shippers and affected communities are reserved for determination in proceedings under Sections 13 and 15, where a "hearing" is expressly required.

Those protesting a Section 4 application may be given an opportunity to present written data, views and arguments as they were permitted to do here as part of the "investigation" contemplated by the section. But there is no "hearing" required in the sense that testimony on both sides must be taken and

---

2. See 49 U.S.C.A. §§ 1(14), 1(15), 1(19), 1(21), 3(1a), 5(1), 5(2) (b), 5(7), 5 (15), 13(3), 15(1), 15(3), 15(6), 15(7), 15(13), 16(1), 19a(i).

the parties given an opportunity to make oral presentation.[3]

This is consistent with the provisions of the Administrative Procedure Act covering such cases. Commission action under Section 4(1) of the Interstate Commerce Act constitutes "rule-making" under Section 2(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1001(c) which defines a "rule" as including, among other things, the "approval or prescription for the future of rates" and "rule-making" as the "agency process for the formulation, amendment, or repeal of a rule".

Section 4(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1003(b), prescribes the procedure to be followed in all cases of rule-making except "where rules are required by statute to be made on the record after opportunity for an agency hearing". An agency hearing is a quasi-judicial adversary proceeding where testimony is presented by the contending parties, both are fully heard and an administrative adjudication follows. 5 U.S.C.A. §§ 1004, 1006. As has been pointed out such a "hearing" is not required by Section 4(1) of the Interstate Commerce Act with which we are dealing here.

Thus, since this is a case of rule-making not coming within the exception to Section 4(b) of the Administrative Procedure Act, the agency is required under that section merely to "afford interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity to present the same orally in any manner". This is what the Commission did here and its procedure was in compliance with the requirements of the Administrative Procedure Act.

We therefore hold that the Commission was not required to hold a "hearing" in this case in the adversary sense.

4. The orders of the Commission are not supported by sufficient findings and do not on their face show sufficient basis for their issuance.

■ An order or decision of the Commission must contain sufficient to show that the Commission has given consideration to all of the criteria which Congress has required to be taken into account in determining the question before it. Unless this has been done there is no basis on which the court can determine whether such criteria have been properly applied or whether the decision "comports with the National Transportation Policy". Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117; Chicago, M., St. P. & P. R. Co. v. State of Illinois, 355 U.S. 300, 78 S.Ct. 304, 2 L.Ed.2d 292; Boston & Maine R. Co. v. United States, 79 S.Ct. 107. See, also, Stott v. United States, D.C.S.D.N.Y., 166 F.Supp. 851, (Three-Judge Court).

The Third Supplemental Order No. 18,790 under review recites that the proposed rate adjustment "is related to the rate adjustment considered after hearing in 301 I.C.C. 669", and states:

"In the light of our previous opinion in this related matter, after investigation of the matters and things involved in fourth section application number 34747, and after consideration of the protest thereto we are convinced that the proposed rates are reasonably compensatory, and that a special case has been presented in which relief from the provisions of Section 4 is warranted."

■ The Fourth Supplemental Order No. 18,790 contains the same recitals.

These are mere conclusions or ultimate findings recited in the language of the statute. Such findings are not enough in the absence of basic findings to support them. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 533, 66 S.Ct. 687, 90 L.Ed. 821; State of Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291; United

3. To the extent that Dixie Carriers v. United States, supra, holds to the contrary, we disagree with its reasoning.

States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 506, 510–511, 55 S.Ct. 462, 79 L.Ed. 1023; New York Cent. R. Co. v. United States, D.C.Mass., 99 F.Supp. 394. See, also, Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 86–87, 51 S.Ct. 1, 75 L.Ed. 221.

The orders of the Commission give no clue to the basis upon which the Commission reached its determination except in so far as they make reference to its previous decision in the "related" proceedings. It cannot be determined from them whether the Commission properly applied the criteria required by Section 4(1) or whether its decision comports with the National Transportation Policy as it affects water carriers.

 The reference in the orders to the previous opinion of the Commission in the "related" matter, far from showing that the Commission's ultimate findings were properly based, indicates the contrary. The prior decision in the Chicago District case to which reference is made (Iron and Steel to Southwest Gulf Ports, 301 I.C.C. 669) principally concerned rates from inland origin points served by barge and authorized all-rail rates higher than the barge rates. Seatrain was not a party to this proceeding and none of the considerations which affected Seatrain were involved.

Thus it appears that the Commission predicated its determination here, in large measure, not on the applications before it or upon the protest of Seatrain, but upon a prior determination dealing with rates in an entirely different territory involving different carriers and different problems. The Commission's orders on their face affirmatively show that this prior decision was a major, if not *the* major, consideration.

The recitals in the order not only fail to indicate the basis for the Commission's action with sufficient particularity to enable the court to determine whether the requirements of Section 4 and of the

National Transportation Policy were met, but they indicate that the Commission failed to make any proper investigation before granting the carriers' applications as Section 4 required it to do.

Moreover, Section 4(b) of the Administrative Procedure Act (5 U.S.C.A. § 1003(b)) requires that in a case of "rule-making" the agency shall incorporate in any rules adopted "a concise general statement of their basis and purpose". Since this is a "rule-making" case some such "concise general statement" appears to be required. While the "purpose" here may be obvious the "basis" is not. The Fourth Section orders do not state the "basis" for their issuance sufficiently to comply with the Administrative Procedure Act.

We hold, therefore, that the orders before us must be set aside and the case remanded to the Commission.

5. The provisions of the temporary restraining order directing the Commission to suspend the tariffs filed by the rail carriers should be continued in force and effect pending further action and order by the Commission on remand.

Section 4 provides that it is "unlawful" to charge less for a longer than for a shorter distance without prior authorization from the Commission. The rail carriers in their Fourth Section applications conceded that the rates for which they sought approval were unlawful unless Commission authorization were given. These rates were embodied in their filed tariffs.

Since the Fourth Section orders which authorized the reduced rates in the filed tariffs are being set aside, such rates are "unlawful".

 While there are cases holding that under some circumstances suspension of rates is a matter resting in the discretion of the Commission, which is not within the court's jurisdiction,[4] our attention has been called to no cases

4. Cf. National Water Carriers Ass'n v. United States, D.C.S.D.N.Y., 126 F.Supp. 87; Carlsen v. United States, D.C.S.D. N.Y., 107 F.Supp. 398; Merchant Truckmen's Bureau of New York v. United States, D.C.S.D.N.Y., 16 F.Supp. 998.

which go so far as to hold that the court lacks jurisdiction to direct the suspension of rates which are, as here, concededly unlawful. There is nothing in the statute or in the cases which would deprive the court of jurisdiction to direct the suspension of such unlawful rates under these circumstances. The court does not lack such jurisdiction. Nor is there any good reason for not exercising such jurisdiction as a matter of principle.

The Fourth Section orders before us are vacated and the case is remanded to the Commission for further proceedings not inconsistent with this opinion. The suspension of the filed tariffs will continue pending such proceedings and further order of the Commission thereon.

Judgment will be entered accordingly.