SEABOARD ALLIED MILLING CORPO-
RATION et al., Plaintiffs,

v.

UNITED STATES of America

and

Interstate Commerce Commission,
Defendants,

and

St. Louis-San Francisco Railway Company et al., Intervening Defendants.

No. 17237–2.

United States District Court
W. D. Missouri, W. D.

Sept. 23, 1969.

Donald Macleay and Peter A. Greene, of Macleay, Lynch, Bernard & Gregg, Washington, D. C., Don M. Jackson, of Jackson & Sherman, Kansas City, Mo., for plaintiffs.

Robert A. Hammond, III, Acting Asst. Atty. Gen., and John H. D. Wigger, Atty., Department of Justice, Washington, D. C., Calvin K. Hamilton, U. S. Atty., and John L. Kapnistos, Asst. U. S. Atty., Kansas City, Mo., for United States of America.

Robert W. Ginnane, General Counsel and Manny H. Smith, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Ernest D. Grinnell, Jr. and James S. Bowie, St. Louis, Mo., Thomas E. Deacy, Jr. and Edward Mullen, of Deacy & Deacy, Kansas City, Mo., for St. Louis-San Francisco Railway Co., Quanah, Acme & Pacific Railway Co., Alabama, Tennessee & Northern R. R., Atchison, Topeka & Santa Fe Railway, Chicago, Burlington & Quincy R. R., Chicago, Rock Island & Pacific R. R., Kansas City Southern Railway Co., Missouri Pacific Railroad Co.

Nola White, 1st Asst. Atty., Austin, Tex., for Railroad Commission of Texas.

Jack Glaves, Gen. Counsel, and Daniel C. Sullivan, Asst. Gen. Counsel, Topeka, Kan., for Kansas Corporation Commission.

Clem W. Fairchild & Robert B. Langworthy, of Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, Mo., for Pillsbury Co., International Milling Co., Archer Daniels Midland Co., Kansas-Missouri-River Mills.

John F. Donelan and John H. Caldwell, of Donelan, Cleary & Caldwell, Washington, D. C., for Burris Mills, Inc., Bay State Milling Co.

Charles O. Ham, Jr., Oklahoma City, Okl., for Oklahoma Corporation Commission.

Deacy & Deacy, Kansas City, Mo., and E. D. Grinnell, Jr. and James S. Bowie, St. Louis, Mo., for Abilene & Southern Ry. Co., Arkansas & Louisiana Missouri Ry. Co., Arkansas Western Ry. Co., Beaver, Meade & Englewood R. Co., Chicago & Eastern Illinois R. Co., Colorado & Southern Ry. Co., Denver and Rio Grande Western R. Co., Doniphan, Kensett & Searcy Ry., Fort Dodge, Des Moines & Southern Ry. Co., Fort Smith & Van Buren Ry. Co., Fort Worth & Denver Ry. Co., Gulf, Mobile & Ohio R. Co., Illinois Central R. Co., Kansas, Oklahoma & Gulf Ry. Co., Louisiana & Arkansas Ry. Co., M-K-T R. Co., Norfolk & Western Ry. Co., St. Louis Southwestern Ry. Co., Southern Pacific Co., Texas & Pacific Ry. Co., Texas Mexican Ry. Co., Texas New Mexico Ry. Co., Union Pacific R. Co., Weatherford, Mineral Wells and Northwestern Ry. Co.

Robt. B. Langworthy, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., and Donelan, Cleary & Caldwell, Washington, D. C., for Southern Bakers Ass'n.

Before GIBSON, Circuit Judge, BECKER, Chief District Judge, and COLLINSON, District Judge.

## MEMORANDUM AND JUDGMENT

COLLINSON, District Judge:

In this action plaintiffs seek to annul and set aside an order of the Interstate

Commerce Commission granting relief from the "long haul-short haul" prohibitions of Section 4(1) of the Interstate Commerce Act.[1] This section makes it unlawful to charge more for a shorter haul than for a longer haul over the same route in the same direction, but gives the Commission power "upon application to the Commission and after investigation" to grant relief from this prohibition in certain types of cases. Such relief is referred to as a "Fourth Section Order."

The Fourth Section Order attacked by plaintiffs in this case granted rail carriers (intervenors in this suit) the authority to establish rates for wheat flour from southwestern and western trunk-line territories (Kansas and Oklahoma) to destinations in southern territory without observing the long-and-short-haul provisions. Plaintiffs are four milling companies that operate flour mills in or near the southern territory, and who protested the application before the Fourth Section Board, but did not request an adjudication hearing.

In granting the relief sought by the rail carriers, the Board said—

A full investigation of the matters and things involved in this proceeding has been made. Consideration has been given to the application, to the protest against the grant of relief sought, and the replies to said protest, all of which are hereby referred to and made a part hereof.

It appears that the proposed rates are necessary to allow the southwestern and western flour mills to compete with the mills located in the South. Protestants' allegations as to discrimination and undue preference and prejudice are not supported by facts of (sic) evidence to justify findings of undue violations of sections 1(5), 2, 3(1), and 3(4) of the Act, and based on the matters and things of record the proposed rates have not been

---

1. Section 4 of the Act, 49 U.S.C. § 4

(1) It shall be unlawful for any common carrier subject to this part or part III to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of like kind of property, for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater compensation as a through rate than the aggregate of the intermediate rates subject to the provisions of this part or part III, but this shall not be construed as authorizing any common carrier within the terms of this part or part III to charge or receive as great compensation for a shorter as for a longer distance: *Provided*, that upon application to the Commission and after investigation, such carrier, in special cases, may be authorized by the Commission to charge less for longer than for shorter distances for the transportation of passengers or property, and the Commission may from time to time prescribe the extent to which such designated carriers may be relieved from the operation of the foregoing provisions of this section, but in exercising the authority conferred upon it in this proviso, the Commission shall not permit the establishment of any charge to or from the more distance point that is not reasonably compensatory for the service performed; and no such authorization shall be granted on account of merely potential water competition not actually in existence: *Provided further*, that any such carrier or carriers operating over a circuitous line or route may, subject only to the standards of lawfulness set forth in other provisions of this part or part III and without further authorization, meet the charges of such carrier or carriers of the same type operating over a more direct line or route, to or from the competitive points, provided that rates so established over circuitous routes shall not be evidence on the issue of the compensatory character of rates involved in other proceedings: *And provided further*, that tariffs proposing rates subject to the provisions of this paragraph requiring Commission authorization may be filed when *application is made to the Commission* under the provisions hereof, and in the event such application is approved, the Commission shall permit such tariffs to become effective upon one *day's notice*.

shown to be in contravention of the order of the Commission in Docket No. 30744, *supra*.

It is concluded that the proposed rates appear to be reasonably compensatory and not otherwise unlawful, and that the matters and things set forth in the application and replies to the protests constitute a special case in which a grant of relief is warranted, * * *.

In concluding its order, the Board noted that in granting the § 4 relief:

The Commission does not hereby approve any rates filed under this authority, all such rates being subject to complaint, investigation, and correction if in conflict with any provision of the Interstate Commerce Act.

Plaintiffs herein filed a motion for reconsideration of this order, and after that motion was denied, this action was brought. The rail carriers involved and a number of other interested parties were permitted to intervene as defendants and have filed a joint brief.

In the joint brief filed by the United States of America and the Interstate Commerce Commission, these defendants do not question that the Fourth Section order is a final order, subject to review by the courts upon the complaint of these plaintiffs. These defendants do contend that a Fourth Section Order is a rule making procedure, and since the statute requires no hearing, Section 4(5) of the Administrative Procedure Act, 5 U.S.C. § 553(c) governs the procedure, and that "the pertinent scope of judicial review of the Commission's order is not whether the findings and conclusions are supported by substantial evidence, but whether they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," citing Seatrain Lines v. United States, 168 F.Supp. 819 (D.C.S.D.N.Y.1958).

The plaintiffs' joint protest before the Board was that the proposed rates would be unjust and unreasonable, unjustly discriminating, and unduly preferential and prejudicial in violation of § 1(5), 2, 3(1) and 3(4) of the Act, 49 U.S.C. §§ 1(5), 2, 3(1) and 3(4), and would also contravene the Commission's decision and order in Docket No. 30744, American Barge Line Co. v. Alabama G.S.R. Co., 316 I.C.C. 759.

The defendants' position is that the Fourth Section Order entered by the Fourth Section Board was a "preliminary determination that plaintiffs had failed to establish their allegations" of the violations urged.

The defendants urge that after this "preliminary determination" the plaintiffs can have their contentions that the order violates other sections of the Act fully adjudicated by filing § 13 and § 15 proceedings before the Commission. This argument is largely based on the opinion in Seatrain Lines v. United States, supra, which held that action under § 4(1) of the Interstate Commerce Commission Act constitutes "rule making" under § 2(c) of the Administrative Procedure Act; that no hearing in the adversary sense is required; that the only questions for decision by the Commission are whether there is a "special case" and whether the proposed rates are "reasonably compensatory"; and that the order of the Commission "must contain sufficient to show that the Commission has given consideration to all of the criteria which Congress has required to be taken into account in determining the question before it. Unless this has been done there is no basis on which the court can determine whether such criteria have been properly applied or whether the decision 'comports with the National Transportation Policy'." In the Seatrain case, the order of the Commission recited that after investigation of the application and consideration of the protest "we are convinced that the proposed rates are reasonably compensatory, and that a special case has been presented in which relief from the provisions of Section 4 is warranted." The

court held that this order contained nothing but conclusions or ultimate findings in the language of the statute, and were not sufficient in the absence of basic findings to support them.

 In the case before this Court the order does set out the various contentions of the parties in some detail, and then finds the ultimate facts or conclusions that "protestants' allegations as to discrimination and undue preference and prejudice are not supported by facts of evidence to justify findings of *undue* violations of §§ 1(5), 2, 3(1) and 3(4) of the Act, and based on matters and things of record the proposed rates have not been shown to be in contravention of the order of the Commission in Docket No. 30744, supra."

The Commission's brief characterizes this order as a "preliminary determination" that the proposed rates did not "unduly" violate other sections of the Act. The order concludes with the statement that the proposed rates (filed simultaneously with the application) were not approved but were "subject to complaint, investigation, and correction if in conflict with any provision of the Interstate Commerce Act."

Even under the doctrine of the *Seatrain* case, which limits the scope of court review of Fourth Section Orders to the narrow limits set out above, the order in this case is fatally defective because it is not supported by findings which show on their face "sufficient basis for the issuance of the order." Under the doctrine of the *Seatrain* case the order must contain sufficient findings that a court can determine if the Commission has taken into consideration the proper criteria required by the statute to be taken into account before granting an exception to the statutory rule. "Findings" that protestants' allegations "are not supported by facts of evidence" and that the "proposed rates appear to be reasonably compensatory and not otherwise unlawful" are certainly no more than the legal conclusions found insufficient in the *Seatrain* case.

However, since the decision in *Seatrain* the United States Supreme Court decided the case of Mechling Barge Lines, Inc., et al. v. United States et al., 376 U.S. 375, 84 S.Ct. 874, 11 L.Ed.2d 788 (1964). In this case the complainants were a barge line and the Chicago Board of Trade, who sought to set aside a Fourth Section Order. The Board of Trade charged that the rates authorized violated § 3(1) of the Act because they discriminated against Chicago grain merchants and processors. The Commission granted Fourth Section relief, without passing upon this and other objections, and this action was affirmed by a three-judge district court (A. L. Mechling Barge Lines, Inc. v. United States, 209 F.Supp. 744), saying—

Due regard was given to the policy and statutory scheme of the Act within the limits afforded by Section 4 and under that Section the Commission is not required to make specific ultimate findings that a rate is lawful and not discriminatory. Citing Seatrain v. United States, supra.

The Supreme Court rejected this reasoning and the argument that the unlawfulness of the rates could be later adjusted in § 13 and § 15 procedures (investigation or complaint procedures). The court cited with approval the Intermountain Rate Cases, 234 U.S. 476, 34 S.Ct. 986, 58 L.Ed. 1408 (1914) in which it was held that the Commission's power to relieve carriers from the requirements of § 4 depends upon—

\* \* \* [T]he facts established and the judgment of that body in the exercise of a sound legal discretion as to whether the request should be granted compatibly with a due consideration of the private and public interests concerned *and in view of the preference and discrimination clause of the second and third sections.* (Emphasis added by Supreme Court.)

The court further held that to require protestants to file complaint and investigation procedures *after* the Fourth Sec-

tion Order would be "splintering" the proceedings and would "needlessly subject appellants' claims to the rigors of circumlocution so deadly to effective administrative and judicial processes."

The defendants attempt to distinguish the plain teachings of *Mechling* on the fact that an evidentiary hearing was held before an Examiner in that case, whereas none was held nor requested in the instant case. They concede in their brief that "such a request would have been acted upon by the Board in its discretion, since the Commission is not required to hold an adjudicatory hearing per §§ 7 and 8 of the Administrative Procedure Act. * * *" (Citing Section.)

We find nothing in the teachings of *Mechling* to support this position. In fact that case directly holds:

First, the Commission's power to issue a Fourth Section Order is dependent upon a due consideration of the preference and discrimination clauses of the second and third section.

Second, if the issues of preference and discrimination are raised and brought to an adversary position in a Fourth Section proceeding, the merits of these contentions must be adjudicated before a Fourth Section Order can be issued.

Third, except for the unusual situation in which consolidation of the preferences and discrimination issues with the Fourth Section procedure would inordinately delay the proceeding, the Commission cannot require protestants "to begin anew" by § 13 and § 15 proceedings to have these issues adjudicated.

In view of the above conclusions we hold that the Fourth Section Order before us should be set aside.

Ordered, that the Fourth Section Order of the Commission before us be, and is hereby, vacated, and this case is remanded to the Commission for further proceedings consistent with this opinion.